# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

BRUCE H. ZITKA,

        Defendant-Appellee.

UNPUBLISHED
May 10, 2018

No. 338064
Ingham Circuit Court
LC No. 17-000105-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

SUSAN HERNANDEZ-ZITKA,

        Defendant-Appellee.

No. 338065
Ingham Circuit Court
LC No. 17-000102-FH

---

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

At issue in these consolidated appeals are charges brought against each defendant for three counts of conducting a gambling operation without a license, MCL 432.218(1)(a), and three counts of using a computer to commit a crime, MCL 752.797(3)(e). After conducting a preliminary examination, the district court found that probable cause existed to bind over defendants to the circuit court. The circuit court, however, entered orders granting defendants' motions to quash the amended information and dismissing all charges. The prosecution appeals as of right, and we reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

Defendants own and operate three internet lounges located in Muskegon County: The Landing Strip, The Lucky Mouse, and Fast Lane. At these establishments, customers can open accounts to wager on and play games online, including slot and lottery type games. On April 14, 2015, the Michigan Gaming Control Board (MGCB) began an investigation to determine

-1-

whether illegal gambling activities were taking place at the lounges. The MGCB interrupted this investigation, however, when the Norton Shores Police Department began its own independent investigation of allegations that unlawful gambling activities were taking place at The Landing Strip. The city attorney for Norton Shores subsequently filed in the Muskegon County Circuit Court a civil nuisance abatement action against The Landing Strip under the local zoning code. The parties ultimately agreed to dismissal of that case, and the court entered a stipulated order of dismissal on January 28, 2016, stating in part, "Defendants agree to operate the Landing Strip LLC without violation of any applicable gambling laws or ordinances *as it is currently operating*."[1] (Emphasis added).

Following the conclusion of the civil lawsuit, the MGCB resumed its investigation of the three lounges in February 2016. As a result of this investigation, defendants were each charged with three counts of conducting a gambling operation without a license, MCL 432.218(1)(a), and three counts of using a computer to commit a crime, MCL 752.797(3)(e). The Amended Information alleges an offense period extending from February 1, 2016, through October 31, 2016. The district court conducted a two-day preliminary examination and, on January 27, 2017, issued an opinion and order determining that probable cause supported the charges and binding over the cases to Ingham County Circuit Court. In reaching this conclusion, the district court determined that the offense of using a computer to commit a crime, MCL 752.797(3)(e), is a specific intent crime, while conducting a gambling operation without a license, MCL 432.218(1)(a), constitutes a general intent crime. With respect to the Muskegon County Circuit Court's stipulated order of dismissal, the district court was "not persuaded that the . . . [order], in a civil proceeding, is particularly helpful here in relation to the probable cause standard."

In the Ingham County Circuit Court, defendants filed identical motions to quash, arguing that the district court erred in determining that the offense of conducting a gambling operation without a license was a general intent crime as opposed to a specific intent crime. Defendants further asserted that, because the stipulated order dismissing the civil case reflected a judicial determination that defendants were operating legally, defendants were acting under a mistake of law that negated the *mens rea* elements of both offenses. The circuit court granted defendants' motions to quash and stated on the record as follows:

> My opinion is based upon the fact that the Attorney General of this state, in part, has the authority to intervene in any litigation that they want to that would be something that relates to state law, I believe they could have gone back to the circuit judge in this case and asked to intervene and have this reargued in some fashion as to its applicability.

---

[1] Although this provision of the stipulated order was referenced before the Ingham County Circuit Court in the present action and in the parties' briefing on appeal, the Muskegon County Circuit Court record is not part of the record before this Court. However, the parties do not dispute the nature of the civil case or the contents of the relevant provision of the stipulated order.

This appears to be a situation where apparently the Attorney General's office and their other agencies were so aggrieved by these poor people that they felt it necessary to investigate for months and months as to whether they existed. They could have walked right in and seen. But in my opinion, when a circuit judge of – is it Muskegon?

* * *

[The Muskegon County Circuit Court judge] has the right to make these rulings and put these rulings in effect. But as I have seen in my cases, I have been chastised. I have been appealed. I have even had people come in here and consent to things and your office appealed that because the consent was wrong. I am just amazed. These cases are dismissed.

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion to quash an information is reviewed for an abuse of discretion. *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). An abuse of discretion occurs when a decision "falls outside the range of reasonable and principled outcomes," *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012), and "[a] trial court necessarily abuses its discretion when it makes an error of law," *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). "To the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Miller*, 288 Mich App at 209.

## III. DISCUSSION

### A. COLLATERAL ESTOPPEL

The prosecution contends that the circuit court abused its discretion by determining that the charges brought against defendants were barred pursuant to collateral estoppel in light of the stipulated order of dismissal in the civil case. We agree.

The doctrine of collateral estoppel generally precludes relitigation of an issue in a subsequent proceeding when that issue has previously been the subject of a final judgment in an earlier proceeding. *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995). Collateral estoppel applies when the following three conditions are satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 683-684; 677 NW2d 843 (2004) (quotation marks and citations omitted). Mutuality of estoppel requires that the party seeking to invoke the doctrine establish that its adversary was either a party to, or in privy with a party to, the previous action. *Id*. at 684.

In the vast majority of cases, parties seek to apply collateral estoppel in the context of two civil proceedings. However, our Supreme Court has recognized the concept of "cross-over estoppel," i.e., "the application of collateral estoppel in the civil-to-criminal context." *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012), citing *People v Gates*, 434 Mich 146,

155; 452 NW2d 627 (1990). Yet, in light of the fundamental procedural differences in the civil versus criminal contexts, the Supreme Court has advised exercising caution in applying cross-over estoppel. See *id*. ("[W]e must hesitate to apply collateral estoppel in the reverse situation – when the government seeks to apply collateral estoppel to preclude a *criminal* defendant's claim of ineffective assistance of counsel in light of a prior *civil* judgment that defense counsel did not commit malpractice." (emphasis in original)); *Gates*, 434 Mich at 157 ("[S]uch procedural differences raise serious doubt about the soundness of applying 'cross-over estoppel' in situations such as this case presents.").

The first prong of the collateral estoppel analysis requires that the ultimate issue to be determined in the subsequent action be the same as that involved in the first action. *Rental Properties Owners Ass'n of Kent County v Kent County Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014). Specifically, the common ultimate issues "must be identical, and not merely similar," and additionally "must have been both actually and necessarily litigated." *Id*. In order for an issue to be "actually litigated," it must have been submitted to and determined by the trier of fact. *Id.*, citing *VanDeventer v Mich Nat'l Bank*, 172 Mich App 456, 463; 432 NW2d 338 (1988).

Under the present circumstances, the previous civil litigation initiated by the Norton Shores city attorney in Muskegon County Circuit Court concerned defendants' compliance with local zoning laws in operating The Landing Strip. Accordingly, the legality of defendants' operations under the state criminal laws was not at issue, nor was their operation of The Lucky Mouse or Fast Lane. Further, no issue in the civil litigation was submitted to or determined by the factfinder; rather, the parties negotiated and stipulated to dismissal of the action. The stipulated order stated in part, "Defendants agree to operate the Landing Strip LLC without violation of any applicable gambling laws or ordinances *as it is currently operating*." (Emphasis added). But because the scope of the civil action was limited to defendants' compliance with local ordinances in their operation of The Landing Strip, the interpretation of this provision must be similarly confined. Thus, we conclude that the issue whether defendants violated state criminal laws by conducting an unlicensed gambling operation was not actually litigated in the civil proceedings.

For collateral estoppel to apply, it is also required that the same parties, or parties in privy, had a full and fair opportunity to litigate the issue. *Monat*, 469 Mich at 682-684. "A party is one who was directly interested in the subject matter and had a right to defend or to control the proceedings and to appeal from the judgment, while a privy is one who, after the judgment, has an interest in the matter affected by the judgment through one of the parties . . . ." *Rental Properties Owners Ass'n*, 308 Mich App at 529-530. The circuit court correctly noted that the state attorney general is authorized to intervene in any state court action "whenever such intervention is necessary in order to protect any right or interest of the state, or of the people of the state." MCL 14.101. However, in the civil action before the Muskegon County Circuit Court, the state had no protectable interest. The case involved a city zoning ordinance, a matter of solely local concern, and there was no coordination between the city attorney's office and the attorney general's office or the MGCB in the civil nuisance action. See *In re Certified Question*, 465 Mich 537, 545; 638 NW2d 409 (2002) ("Just as the authority of counties to sue in matters of local interest cannot be used to undermine the authority of the state to sue in matters of state interest, the authority of the state to sue in matters of state interest cannot be used to undermine

-4-

the authority of political subdivisions to sue in matters solely of local interest.").[2] Accordingly, the prosecution was neither a party to nor a party in privy to the civil action.

Further, our Supreme Court has declined to apply collateral estoppel in instances when the purposes of the two proceedings are "so fundamentally different that application of collateral estoppel would be contrary to sound public policy." See *Gates*, 434 Mich at 161. For example, in *Gates*, the Supreme Court declined to hold that a prior determination of no jurisdiction in a child-protective proceeding operated to collaterally estop subsequent criminal charges. *Id*. at 162. Likewise, in *People v Windsor*, 207 Mich App 221, 223; 523 NW2d 881 (1994), this Court declined to apply a determination of no wrongdoing reached by the Michigan Employment Security Commission to collaterally estop a criminal action involving the same defendant. We therefore conclude that the circuit court abused its discretion by granting the motion to quash and by dismissing the case on the basis of collateral estoppel.

## B. *MENS REA*

The prosecution next contends that conducting an unlicensed gambling operation, MCL 432.218(1)(a), is a strict liability offense as opposed to a general intent offense as determined by the district court. This argument is relevant to the grounds underlying defendants' motion to quash. The essence of defendants' argument in that motion was that – like the offense of using a computer to commit a crime, MCL 752.797(3)(e) – conducting an unlicensed gambling operation is a specific intent offense and that defendants' *mens rea* for both charges was negated by a mistake of law. Because the circuit court did not rule on the merits of this position, it is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."). Nonetheless, if an issue is raised before the trial court and is pursued on appeal, this Court is not foreclosed from reviewing it even if it was not decided by the trial court. *Loutts v Loutts*, 298 Mich App 21, 23-24; 826 NW2d 152 (2012).

To determine the intent element required to commit a criminal offense, this Court must evaluate the mental state set forth in the relevant statute. *People v Fennell*, 260 Mich App 261, 266; 677 NW2d 66 (2004). "A crime requiring a particular criminal intent beyond the act done is generally considered a specific intent crime; whereas, a general intent crime merely requires 'the intent to perform the physical act itself.' " *Id*., quoting *People v Disimone*, 251 Mich App 605, 610; 650 NW2d 436 (2002). Here, the statute at issue, MCL 432.218(1)(a), provides:

> (1) A person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $100,00.00, or both, and shall be barred from receiving or maintaining a license for doing any of the following:
>
> (a) Conducting a gambling operation where wagering is used or to be used without a license issued by the [Michigan Gaming Control B]oard.

---

[2] *In re Certified Question* involved the interpretation of MCL 14.28, the former version of MCL 14.101.

This language does not expressly indicate a degree of intent, nor does the statute further define the term "conducting." Thus, the degree of *mens rea* required to violate MCL 432.218(1)(a) is a matter of statutory interpretation.

When interpreting the meaning of a statute, the Court's primary goal is "to ascertain and give effect to the intent of the Legislature." *People v Thomas*, 263 Mich App 70, 73; 687 NW2d 598 (2004) (quotation marks and citations omitted). If the statutory language is clear and unambiguous, it must be enforced as written in accordance with its plain and ordinary meaning. *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008). "However, if a statute is susceptible to more than one interpretation, judicial construction is proper to determine legislative intent. Statutory language should be construed reasonably, keeping in mind the purpose of the act." *Thomas*, 263 Mich App at 73 (quotation marks and citations omitted).

Though MCL 432.218(1)(a) is silent with respect to intent, there is no clear indication that the Legislature sought to discard the *mens rea* requirement. See *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2001). "[C]ourts will infer an element of criminal intent when an offense is silent regarding *mens rea* unless the statute contains an express or implied indication that the legislative body intended that strict criminal liability be imposed." *People v Likine*, 492 Mich 367, 391-392; 823 NW2d 50 (2012) (quotation marks and citations omitted). For example, in *Likine*, our Supreme Court construed the statute as imposing strict liability because the Legislature had amended it to eliminate the terms "refus[al] or neglect," words which implied an element of intent. *Id*. at 392. In contrast, the Supreme Court confronted in *Kowalski* a criminal statute that incorporated the element of "encouraging." *Kowalski*, 489 Mich at 499. The Supreme Court determined that, although the statute was silent with respect to *mens rea*, it nonetheless had a *mens rea* element, that being "the intent to do the physical act of encouraging." *Id*. at 500. Further, by completing an act, an accused "is presumed to intend the natural consequences of his [actions] . . . ." *Id*. (quotation marks and citation omitted).

MCL 432.218(1)(a) does not contain an express or implied indication that the Legislature intended that strict criminal liability be imposed. As in *Kowalski*, the statute's use of the term "conducting" evidences an intention that the *mens rea* element of MCL 432.218(1)(a) be the intent to perform the act of "conducting." Although the prosecution correctly argues that "the presumption in favor of imposing criminal intent as an element does not invariably apply to public-welfare or regulatory offenses," *People v Janes*, 302 Mich App 34, 47; 836 NW2d 883 (2013), citing *Staples v US*, 511 US 600, 606; 114 S Ct 1793; 128 L Ed 2d 608 (1994), there is no evidence here that the Legislature intended strict criminal liability to be imposed. Indeed, by attaching a specific intent element to other subsections of MCL 432.218(1), the Legislature demonstrated that its objective was not to impose strict liability.

The language of MCL 432.218(1)(a) is consistent with a general intent crime as opposed to a specific intent crime. As discussed, MCL 432.218(1)(c)-(e) includes express elements of specific intent, such as "knowingly" and "willfully," thus requiring criminal intent beyond the physical act done. See *People v Gould*, 225 Mich App 79; 570 NW2d 140 (1997), quoting *People v Lerma,* 66 Mich App 566, 569-570; 239 NW2d 424 (1976) ("[S]pecific intent crimes would be limited only to those crimes which are required to be committed either 'purposefully' or 'knowingly' . . . ." (quotation marks omitted)). The statutory scheme as a whole evinces the Legislature's awareness of language heightening a crime's *mens rea* to that of a specific intent

crime. However, with respect to MCL 432.218(1)(a), the Legislature chose to use language consistent with a general intent crime.

## C. MISTAKE OF LAW

Finally, defendants argued in their motion to quash that they were operating under a mistake of law negating the specific intent they claimed was required under the offenses charged. Specifically, they maintain that they relied on the Norton Shores city attorney's agreement in the stipulated order of dismissal that The Landing Strip would be operated in compliance with any gambling laws or ordinances "as it [was] currently operating." While defendants characterize this argument as a mistake of law defense, the prosecution contends it is properly viewed as a theory of entrapment by estoppel. Under either of these two fundamentally similar analyses, we conclude that defendants' argument fails.

This Court has held that a defense of entrapment by estoppel applies when the defendant establishes by a preponderance of the evidence that:

> (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement. [*People v Woods*, 241 Mich App 545, 558; 616 NW2d 211 (2000), quoting *United States v West Indies Transport, Inc*, 127 F3d 299, 313 (CA 3, 1997) (quotation marks omitted).]

Similarly, defendants cite to federal case law describing the mistake of law defense: " 'In order to assert a defense of a mistake of law based upon a good faith reliance on the representations of public officials, the Appellants must demonstrate that they received communications from public officials in a situation in which reliance would have been justified.' " *United States v Stagman*, 446 F2d 489, 491 (CA 6 1971), quoting *United States v Gebhart*, 441 F2d 1261, 1263 (CA 6 1971).

Initially, we note that defendants' mistake of law argument has no impact on the charges brought under MCL 432.218(1)(a), as we have determined this is a general intent offense. Defendants therefore need not have intended to violate the law but rather simply intended to perform the act of "conducting" an unlicensed gambling operation. See *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983). Accordingly, defendants' alleged belief that they were operating their establishments in compliance with the law is immaterial to a determination of whether they committed this offense.

Defendants' argument is equally unavailing with respect to the specific intent charges brought under MCL 752.797(3)(e). Entrapment by estoppel and mistake of law defenses both require that the alleged reliance on a public official's representation be "reasonable" or "justified." Defendants are unable to meet this requirement. They claim reliance on the Norton Shores city attorney's agreement in the stipulated order that operations at The Landing Strip were in compliance with applicable gambling laws and ordinances. It cannot be said that a statement by a city attorney in a civil suit involving a local ordinance could be authoritative on a

matter of criminal state law such that reliance on it was reasonable. The statement was not made by the attorney general's office, by the MGCB, or by a county prosecutor. Rather, it was made pursuant to a stipulated agreement regarding a civil suit made by an entity with limited authority. Additionally, the civil case involved only the Landing Strip and not the other two businesses involved in the present criminal suit. Although defendants imply that all three establishments operated in the same manner, it does not appear that all were within the city limits of Norton Shores or that the city attorney would have possessed knowledge regarding the operations in the other two establishments. For these reasons, we conclude that neither a mistake of law nor an entrapment by estoppel defense is applicable.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel