*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATHANIEL WARD,

        Defendant-Appellant.

UNPUBLISHED
October 29, 2020

No. 348475
Wayne Circuit Court
LC No. 18-005445-01-FH

Before: BOONSTRA, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (penetration of a physically helpless person), and resisting or obstructing an officer, MCL 750.81d(1). The circuit court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for his CSC-III conviction and 10 to 15 years for his resisting or obstructing an officer conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

While visiting her sister in River Rouge, JH, the victim in this case, came into contact with three male friends of her sister whom she did not know. One of them was defendant. JH testified at trial that she fell asleep on her sister's couch, and awoke during the early morning hours of May 30, 2018, to defendant inserting his fingers into her vagina. JH pushed defendant off of her, a brief physical altercation occurred, and defendant was eventually ushered out of the house by JH's sister and another friend. Defendant left behind his cell phone; JH testified that she looked in his phone to find his name. JH then searched Michigan's Offender Tracking Information System (OTIS) for defendant's name, and because defendant was on parole at the time, found information about defendant and a photograph of him. JH reported the assault and defendant's identity to the police and defendant's parole officer, and a warrant was issued for defendant's arrest.

Later that day, Investigator John Hugle of the Absconder Recovery Unit (ARU), which is a branch of the Michigan Department of Corrections (MDOC), responded to the arrest warrant for defendant. Investigator Hugle began to surveil defendant's home in River Rouge; two hours later, defendant arrived on a bicycle and entered the residence. Investigator Hugle approached the front

door and knocked. Defendant opened the front door slightly and Investigator Hugle, who was wearing clothing and body armor that clearly identified him as an officer with MDOC, announced that he had a warrant for defendant's arrest and asked him to come outside. Defendant said "no," attempted to push the door closed, and began backpedaling. Investigator Hugle stopped the door with his foot, then saw defendant begin to turn and reach toward his pockets. Fearing for his safety, Investigator Hugle deployed his taser, incapacitating defendant, who was then arrested. Two folding knives were found in defendant's pockets.[1]

Prior to trial, the prosecution moved the circuit court under MRE 404(b) to admit JH's testimony concerning her use of OTIS to identify defendant and her call to his parole officer, as well as testimony from an MDOC employee concerning the nature of OTIS, which would have the effect of revealing defendant's status as a parolee, although his specific prior crimes would not be disclosed. The prosecution argued that the evidence was admissible for the purpose of showing the identify of the defendant and explaining how JH, who had just met defendant that day, was able to identify him by name and photograph. Defendant argued that the evidence was impermissible propensity evidence and was unfairly prejudicial. The circuit court allowed the testimony, but gave a limiting instruction to the jury before its deliberations, as discussed later in this opinion.

Defendant was convicted and sentenced as described. This appeal followed. After filing his claim of appeal, defendant filed a motion *in propria persona* with this Court, seeking to remand for a *Ginther*[2] hearing on the issue of his trial counsel's ineffectiveness, which this Court denied.[3]

## II. ADMISSION OF EVIDENCE OF DEFENDANT'S PAROLEE STATUS

Defendant argues that the circuit court abused its discretion by granting the prosecution's MRE 404(b) motion and admitting evidence related to OTIS and his status as a parolee. We disagree.

"[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

---

[1] Defendant was originally charged with two counts of carrying a concealed weapon (CCW), but those charges were dismissed by the circuit court because the knives were of a type that were not prohibited by the relevant statute.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] See *People v Ward*, unpublished order of the Court of Appeals, entered April 17, 2020 (Docket No. 348475).

MRE 404(b) regulates the admissibility of evidence of "[o]ther crimes, wrongs, or acts . . . ." MRE 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Michigan Supreme Court has explained that "MRE 404(b) 'is a rule of legal relevance' that 'limits only one category of logically relevant evidence': '[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.' " *People v Jackson*, 498 Mich 246, 258; 869 NW2d 253 (2015), quoting *People v VanderVliet*, 444 Mich 52, 61-63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). "Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012), quoting *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). MRE 404(b), however, "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). That "nonexhaustive list of reasons" includes "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

Even where evidence is considered to be relevant under MRE 401 and admissible for a proper purpose under MRE 404(b), the evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." See MRE 403. Notably, MRE 403 does not regulate all evidence that is "prejudicial" because "[r]elevant evidence is inherently prejudicial." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (citation omitted), mod 450 Mich 1212 (1995). Rather, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*; see also *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011).

Before trial, the prosecution provided notice to defendant that it would be seeking the admission of other-acts evidence under MRE 404(b). Specifically, the prosecution identified testimony regarding JH's discovery of defendant's identity via her use of OTIS. The prosecution asserted that such testimony would involve a discussion of the OTIS website, which contained defendant's photograph because he was on parole. Thus, the jury would be exposed to defendant's parolee status, although the information regarding the actual crimes of which defendant was convicted would be redacted. The prosecution argued that this evidence was relevant to and probative of the issue of defendant's identity as the perpetrator of the sexual assault of JH. Defendant argued the evidence was not relevant to his identity, but instead was being used solely as a way to inflame the passions of the jurors and to convince them that defendant had committed the charged crimes because he was a criminal. Further, defendant insisted that any marginal probative value of the OTIS evidence was substantially outweighed by the danger of unfair prejudice, and thus that the evidence should be excluded under MRE 403. The circuit court agreed with the prosecution, reasoning that the evidence was relevant to and probative of defendant's identity, admissible, and not excludable under MRE 403. The circuit court noted that the evidence that defendant was on parole at the time he committed the sexual assault would have been presented to the jury even without JH's testimony about OTIS because Investigator Hugle was part

of the ARU, a branch of MDOC that finds and arrests individuals who have violated their parole. In any event, to limit any unfair prejudice, the circuit court agreed to and did give a limiting instruction to the jury.

Defendant now reiterates his argument that the evidence was inadmissible under MRE 404(b). Our Supreme Court has directed that the first step in analyzing admissibility of other-acts evidence under the rules of evidence requires consideration of whether "the evidence [was] offered for a proper purpose under Rule 404(b) . . . ." *VanderVliet*, 444 Mich at 55. One of the proper purposes for the introduction of other-acts evidence specifically considered by MRE 404(b) is to prove "identity." MRE 404(b)(1). Here, the prosecution asserted that it was introducing the evidence to prove defendant's identity as the perpetrator of the sexual assault of JH. Indeed, JH's testimony established that she used OTIS to obtain a photograph of her attacker and information about him, which she reported to the police and his parole officer, leading to defendant's arrest as the alleged perpetrator of the assault against her. The prosecution's use of this evidence to prove identity was a proper purpose under MRE 404(b)(1). *VanderVliet*, 444 Mich at 55.

The second step in analyzing other-acts evidence requires consideration of "the legal relevance of the evidence in light of" the stated purpose for its admission. *People v Kelly*, 317 Mich App 637, 644; 895 NW2d 230 (2016). "Under the second prong of the *VanderVliet* test, logical relevance is determined by the application of MRE 401 and MRE 402." *People v Denson*, 500 Mich 385, 400; 902 NW2d 306 (2017). "We have emphasized the importance of logical relevance, calling it the 'touchstone' of the admissibility of other-acts evidence." *Id*. "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Crawford*, 458 Mich at 387. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401.

JH's use of OTIS was probative of a material fact at issue in the trial—defendant's identity as the person who sexually assaulted her. *Id*. It is clear from the record that defendant's identity was a material fact at issue during the trial. JH testified that the afternoon preceding the sexual assault was the first time that she met the person who assaulted her. She also testified that she had not been provided with that person's name during their interactions. Therefore, the jury was required to consider whether she actually identified the correct person as the one who had assaulted her, making that issue a material fact for the jury to decide. *Crawford*, 458 Mich at 387.

JH testified that her attacker had left his cell phone at her sister's house when he left on the morning of the assault. She used that cell phone to access its owner's e-mail account, and discovered defendant's name, "Nathaniel Ward." JH then searched for Nathaniel Ward on OTIS. When she found the listing for defendant and saw the photograph, she immediately identified him as the man who assaulted her on May 30, 2018.

JH's use of OTIS to find defendant was probative of her ability to identify him. *Denson*, 500 Mich at 401. Without this evidence, the jury would have been left to speculate about how JH was able to identify defendant as her attacker despite having only met him once and not having been introduced to him by name.

Defendant argues that the only evidence that actually was probative of defendant's identity was that JH looked up his name online and discovered his photograph. In other words, the fact that JH found defendant on OTIS specifically was not probative of his identity as the perpetrator. We disagree. The jury was entitled to consider the reliability of the source of the photograph that JH used to identify defendant as her perpetrator. Stated differently, evidence that JH consulted a governmental database to identify the photograph of defendant was probative of the weight the jury might give her identification. Moreover, an MDOC employee testified that defendant's photograph on OTIS was last updated when he was paroled in August 2017, less than one year before the assault occurred. That testimony had significant probative value because it showed that JH had viewed a recent photograph of defendant when she identified him as the perpetrator. We conclude that the circuit court properly determined that JH's and the MDOC employee's testimony regarding OTIS was probative of defendant's identity, which was a material fact at issue during the trial. *Denson*, 500 Mich at 401; *Crawford*, 458 Mich at 387.

The third prong of the test for admissibility of other-acts evidence under *VanderVliet*, 444 Mich at 55, questions whether, although relevant, the evidence should be still be excluded under MRE 403 because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Gipson*, 287 Mich App 261, 263; 787 NW2d 126 (2010), quoting *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Stated differently, the "major function [of MRE 403] is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Mills*, 450 Mich at 75 (citation omitted). Such concerns arise where "the tendency of the proposed evidence [is] to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks and citation omitted). Additional concerns include "the danger of confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins*, 491 Mich at 489 (quotation marks and citation omitted).

Defendant argues that the evidence that he was a parolee (and therefore had previously been convicted of a crime) was unfairly prejudicial in light of the minimally probative nature of the evidence. We disagree. As discussed, the evidence involving OTIS was highly probative of defendant's identity, which was a material fact at issue during the trial. JH did not know defendant or his name when the assault occurred; therefore, the methods she used to identify him (and their reliability) was important for the jury to consider. Moreover, although the fact that defendant had been recently paroled was revealed, the jury was not made aware of the actual crimes of which defendant had been convicted. The fact that the jury was made generally aware that defendant had been convicted of a crime in the past, without more, does not suggest that the jury would have turned to passion or bias in deciding to convict defendant of the charged crimes. *Cameron*, 291 Mich App at 611. Furthermore, because the specific crimes were not mentioned, there was little possibility that the jurors would confuse the issues and convict defendant on the basis of a crime not charged in the present case. *Watkins*, 491 Mich at 489. In light of the relatively minor prejudice, if any, and the significant probative value of the evidence, the circuit court did not err by deciding that the evidence need not be excluded under MRE 403. *VanderVliet*, 444 Mich at 55.

Even if the circuit court did improperly admit the evidence, defendant would still have been required to show that he was prejudiced by the admission of the evidence. See *Lukity*, 460 Mich at 496 ("[A] preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative."), quoting MCL 769.26. A trial court may often prevent prejudice through a limiting instruction. *Kelly*, 317 Mich App at 644; see also *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017).

The circuit court gave the following limiting instruction before the jurors began deliberations:

> 5.11. You have heard evidence that was introduced to show that the Defendant was on parole at the time of the alleged offenses. If you believe this evidence you must be very careful only to consider it for certain purposes.
>
> You may only think about whether this evidence tends to show how [the victim] identified Nathaniel Ward as the person who sexually assaulted her. You must not consider this evidence for any other purpose.
>
> For example, you must not decide that it shows that the Defendant is a bad person or that he's likely to commit crimes. You must not convict the Defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crime or you must find him not guilty.

"Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). In light of the circuit court's instruction, we conclude that defendant cannot demonstrate prejudice. *Lukity*, 460 Mich at 496. This is especially true because, as the circuit court noted, the jury would likely have inferred defendant's parolee status from his apprehension by an ARU officer in any event.

Additionally, our conclusion is supported by the strong independent evidence presented at trial. JH gave specific, detailed testimony about her recollection of events that night, which were largely corroborated by her sister. Even if admitted in error, the challenged evidence was not outcome-determinative, because the jury would have been exposed to defendant's parolee status anyway, any unfair prejudice was limited by a jury instruction, and there was strong independent evidence of defendant's guilt. *Id*.

## III. DEFENDANT'S STANDARD 4 BRIEF

Defendant, in his Standard 4 brief,[4] alleges a wide array of errors to have occurred in this case. We find all of defendant's allegations to be without merit.

---

[4] A supplemental appellate brief filed in propria persona by a criminal defendant under Michigan Supreme Court Administrative Order No. 2004-6, Standard 4.

## A. ALLEGED CONSTITUTIONAL AND JURISDICTIONAL ERRORS—DISTRICT COURT

Defendant contends that the district court made a number of errors, that resulted both in constitutional violations and a loss of jurisdiction. We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Zitka*, 325 Mich App 38, 48; 922 NW2d 696 (2018) (quotation marks and citation omitted). Defendant first challenges alleged errors with the felony warrant, felony complaint, and his arraignment on those documents. Because defendant did not raise those issues with the district or circuit courts, they are not preserved for appellate review. *Id*. Defendant's second and third challenges are constitutional arguments regarding Magistrate Vesta Svenson's age and requirement to uphold the United States Constitution. Once again, a review of the record shows that defendant did not raise these issues in the lower courts, and they thus are not preserved for review. *Id*. Lastly, defendant argues that the district court lacked jurisdiction because the case actually involved a contract and a trust, over which the district court never established jurisdiction. In three separate motions that defendant filed *in propria persona* with the circuit court, defendant made similar allegations regarding contracts, corporations, trusts, executors, and trustees that he now raises in this appeal. The circuit court denied defendant's motions to dismiss the charges against him on those grounds. Therefore, these arguments by defendant are preserved for appeal. *Zitka*, 325 Mich App at 48. Additionally, defendant's challenges to jurisdiction generally are also preserved, because "[j]urisdictional defects may be raised at any time." *People v Martinez*, 211 Mich App 147, 149; 535 NW2d 236 (1995).

Defendant's arguments require consideration of certain court rules, statutes, and constitutional provisions, and also challenge the district court's exercise of jurisdiction. "To the extent our analysis involves the interpretation of court rules or questions of subject-matter jurisdiction . . . our review is de novo." *People v Clement*, 254 Mich App 387, 389-390; 657 NW2d 172 (2002). For preserved issues, "[w]e review de novo constitutional challenges and questions of statutory interpretation . . . ." *People v Hrlic*, 277 Mich App 260, 262; 744 NW2d 221 (2007) (citations omitted). However, because certain issues were not raised, addressed, and decided, we review the "unpreserved claim[s] for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).

## 2. ANALYSIS

Defendant's allegations of errors committed by the district court are without merit.

Defendant argues that the felony complaint filed in this case lacked sufficient factual detail and was not properly authorized by a prosecutor. We disagree. "A complaint is a written accusation that a named or described person has committed a specified criminal offense." MCR 6.101(A). "The primary function of a complaint is to move the magistrate to determine whether a warrant shall issue." *People v Higuera*, 244 Mich App 429, 443; 625 NW2d 444 (2001) (quotation marks and citation omitted). "A complaint shall recite the substance of the accusation against the accused. The complaint may contain factual allegations establishing reasonable cause." MCL 764.1d. "The complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense." MCR 6.101(A); see also *People v Glass*, 464 Mich 266, 277; 627 NW2d 261 (2001). "The factual allegations contained in the complaint . . . may be based upon personal knowledge, information and belief, or both." MCL 764.1a(3).

The complaint in this case, which was sworn to by Detective Danny Dotson, the officer-in-charge of the case, stated that there was probable cause to believe that defendant committed CSC-III and resisting or obstructing an officer on May 30, 2018, at JH's sister's house in River Rouge. The complaint contained specific allegations that defendant "did engage in sexual penetration to wit finger into genital opening with [the victim], said defendant knowing or having reason to know that the victim was physically helpless, contrary to MCL 750.520d(1)(c)." As to the second charge, the complaint stated that defendant "did assault, batter, wound, resist, obstruct, oppose, or endanger John Hugle, a police officer of Absconder Recovery Unit, Michigan Department of Corrections that the defendant knew or had reason to know was performing his or her duties, contrary to MCL 750.81d(1)."

Detective Dotson, therefore, swore that defendant had digitally penetrated JH's vagina while he knew she was physically helpless, and then resisted or obstructed Investigator Hugle, an officer with the ARU of the MDOC, in River Rouge on May 30, 2018. The complaint also contained the relevant statutory sections that were allegedly violated. This was enough factual information to satisfy the relatively limited standard required of a felony complaint, which by court rule "must include the substance of the accusation against the accused and the name and statutory citation of the offense." MCR 6.101(A). This Court has held, although relating to different charges, that a similar, brief factual summary was sufficient. *People v Cain*, 299 Mich App 27, 52; 829 NW2d 37 (2012), aff'd in part, rev'd in part on other grounds 495 Mich 874 (2013).

Defendant also contends that the felony complaint was insufficient because it was not properly authorized by a prosecutor. A review of the felony complaint filed on June 2, 2018, shows that it was authorized by a prosecutor, Jacqueline Nicholas, on the day it was filed and signed by Magistrate Svenson. Therefore, despite allegations to the contrary by defendant, the district court record in this case clearly establishes that the prosecution complied with MCR 6.101(C).

In sum, defendant's allegations regarding errors with the complaint lack merit. Moreover, our Supreme Court has held that "inadequacies of the complaint" do not "affect the jurisdiction of the court . . . ." *People v Burrill*, 391 Mich 124, 132; 214 NW2d 823 (1974). See also *People v Mayberry*, 52 Mich App 450, 450-451; 217 NW2d 420 (1974) (concluding that "a conclusory complaint . . . does not oust jurisdiction"). Therefore, even if defendant had proven that there were inadequacies with the felony complaint, he would not have been entitled to reversal because of a

resultant lack of jurisdiction. *Burrill*, 391 Mich App at 132. Consequently, defendant's arguments regarding the felony complaint lack merit.

Next, defendant argues that the district court made procedural errors during his arraignment, which resulted in a loss of jurisdiction. Primarily, defendant argues that his arraignment was unnecessarily delayed and was held in the wrong district court. Both arguments lack merit. "Unless released beforehand, an arrested person must be taken without unnecessary delay before a court for arraignment in accordance with the provisions of this rule . . . ." MCR 6.104(A). The United States Supreme Court has held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement . . . ." *Riverside Co v McLaughlin*, 500 US 44, 56; 111 S Ct 1661; 114 L Ed 2d 49 (1991). The Court clarified, though, that a violation of the 48-hour rule does not automatically require a finding that a delay was unreasonable, but only that, "[i]n such a case, the arrested individual does not bear the burden of proving an unreasonable delay." *Id*. at 57. Instead, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id*.

Defendant's arraignment occurred on June 2, 2018, following his arrest on May 30, 2018. Therefore, more than the 48-hour period discussed in *Riverside Co*, 500 US at 56-57, had elapsed. Defendant contends that this was a jurisdictional error requiring the reversal of his convictions and the dismissal of the charges against him. But this Court has held that, " '[w]hile an improper delay in arraignment may necessitate the suppression of evidence obtained as a result of that delay, the delay does not entitle a defendant to dismissal of the prosecution.' " *Cain*, 299 Mich App at 49, quoting *People v Harrison*, 163 Mich App 409, 421; 413 NW2d 813 (1987). Our Supreme Court has held similarly, reasoning that application of the exclusionary rule—not a loss of jurisdiction and dismissal—is the remedy for an improperly delayed arraignment. *People v Mallory*, 421 Mich 229, 240-241; 365 NW2d 673 (1984). Defendant has not alleged that evidence was obtained as a result of an unnecessary delay and should have been excluded. Defendant has not provided any grounds for this Court to provide him relief for the delayed arraignment, even assuming the delay was unreasonable. *Id*.; *Cain*, 299 Mich App at 49; *Harrison*, 163 Mich App at 421.

In regards to the place of the arraignment, the court rules provide that "[a]n accused arrested pursuant to a warrant must be taken to a court specified in the warrant." MCR 6.104(B). Defendant argues that this rule was violated, because the felony warrant in this case specified the 25th District Court, and Magistrate Svenson, who signed the warrant, was not a judge in that district. Defendant is correct that the felony warrant in this case appears on a form containing the address of the 25th District Court. The record shows that defendant was arraigned and bound over at the 25th District Court, and that the arraignment was conducted by Magistrate Svenson and Judge David Zelenak. Defendant has presented no evidence to establish the factual basis for his claim.

Defendant also argues that the district court erred by failing to make "[a] verbatim record . . . of the arraignment," and that the district court violated MCR 6.104(F). "As the appellant," defendant "bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). The record as provided to this Court does not contain a transcript of the district court's arraignment on the felony complaint and warrant. However, the record also

shows that defendant never requested production of the transcript of his arraignment. Therefore, defendant has failed to bear his burden to "verify the factual basis" of his contention that such a record does not exist. *Id.*

Defendant further argues that his convictions must be reversed because Magistrate Svenson was over the age of 70 years during the district court proceedings. Defendant is in error, because Const 1963, art 6, § 19(3), applies to state court judges, but does not, by its language, apply to magistrates. Under that provision of the Michigan Constitution, individuals cannot be appointed or elected as state court judges when they are over the age of 70 years on the date of the election or appointment. *O'Connell v Dir of Elections*, 317 Mich App 82, 86; 894 NW2d 113 (2016). But the requirements and duties of a district court magistrate are established by statute. *In re James*, 492 Mich 553, 566 n 21; 821 NW2d 144 (2012). These statutory qualifications, notably, do not contain an age limitation. See MCL 600.8501 and MCL 600.8507. Defendant has failed to support his argument with applicable law (and has further failed to demonstrate, that even if the Michigan Constitution were applicable, Magistrate Svenson was appointed or elected when she was over the age of 70). Moreover, defendant has failed to cite any authority for the proposition that the remedy for a violation of an age limitation on magistrates would be the reversal of his convictions.

Defendant makes a lengthy and largely incoherent argument regarding alleged mass fraud by the criminal justice system in the United States. The crux of his argument appears to be that district and circuit courts in Michigan are only able to render decisions in criminal cases by considering people as personal property and with the consent of the accused. He claims that by withdrawing his consent and asserting that he is representing a trust, the district and circuit courts were divested of their jurisdiction. Defendant also makes an array of allegations that, because the courts are actually dealing with property and not people, they have to prove there was a valid debt or valid contract before they can proceed. Because there was no evidence of a debt or a contract, defendant contends that his convictions must be reversed and all "criminal" charges against him dismissed. In support of that argument, defendant cites sources including Federal Rules of Civil Procedure; Title 5 of the United States Code; Title 27 of the Code of Federal Regulations; and various treatises, cases, and canons. We decline to respond at length to these sweeping allegations, but only note that under MCL 600.8311(c) and(d), "the district court has jurisdiction of . . . [a]rraignments, the fixing of bail and the accepting of bonds, [and] . . . [p]reliminary examinations in all felony cases . . . ." A district court obtains jurisdiction over a specific defendant to perform the arraignment and preliminary examination when it issues a warrant on the basis of a probable-cause finding after reviewing a sworn complaint. *People v Mosley*, 338 Mich 559, 564; 61 NW2d 785 (1953). Defendant has not successfully challenged the district court's jurisdiction in this case.

Defendant's final constitutional/jurisdictional argument is that the district court lost jurisdiction over him when it failed to ensure that his due-process rights were not violated by the other errors he has alleged. Defendant goes so far as to suggest that the district court has committed treason, see 18 USC 2381,[5] by failing to ensure his constitutional right to due process. As

---

[5] "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason

discussed, we find no merit to his claims of error; we also decline to find the district court to have lost jurisdiction over defendant, through treason or otherwise.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was not provided effective assistance of counsel during the district-court proceedings. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Because defendant did not move the circuit court for a new trial or a *Ginther* hearing on his counsel's ineffectiveness, and this Court denied his motion to remand for a *Ginther* hearing, our review is limited to the existing record. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015); see also *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

### 2. ANALYSIS

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense— in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

We will not find trial counsel to be ineffective when an objection would have been futile; nor will we second-guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The

---

and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States." 18 USC 2381.

defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (alteration in *Cooper*).

Defendant argues that his counsel was ineffective during the district-court proceedings for failing to object to the issues with the felony complaint, felony warrant, and jurisdiction identified in his Standard 4 brief. As discussed earlier in this opinion, we find no error requiring reversal in any of these allegations. Thus, any objection or motion to dismiss filed by defendant's counsel would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019) (quotation marks and citation omitted).

Defendant also argues that his counsel was ineffective for failing to adequately cross-examine the prosecution's witnesses during the preliminary examination. Generally, counsel's decision regarding whether or how to cross-examine witnesses is a matter of trial strategy, "which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). During the preliminary examination, the prosecution called Investigator Hugle as the first witness. After Investigator Hugle provided testimony about his altercation with defendant during his arrest, defendant's district court counsel engaged in the following brief cross-examination:

> *Q.* Did you have a bodycam on?
>
> *A.* No, sir.
>
> *Q.* Okay. Is it a policy . . .
>
> *A.* No, sir.
>
> *Q.* . . . if you wear a bodycam or not?
>
> *A.* No, sir. No, sir.
>
> *Q.* Okay.

JH also testified at the preliminary examination, and the prosecution elicited testimony that substantively matched her testimony during trial. Defense counsel only asked JH one question on cross-examination:

> *Q.* Uh, I just want to clarify ma'am, when—when, um, [defendant], um, had his fingers in your vagina, was anybody else present, anybody else see this to your knowledge?
>
> *A.* No.

On the second day of the preliminary examination, the prosecution called Lieutenant Vanderaa to testify regarding the two knives found in defendant's possession after his arrest. Defense counsel did not ask any questions on cross-examination.

Defense counsel's strategy during cross-examination was clear—to ensure that the district court judge was aware that there were no other witnesses to defendant's alleged sexual assault of JH and that there was no bodycam footage of defendant's arrest. Although the cross-examination was brief, defense counsel elicited these weaknesses in the prosecution's case from the testifying witnesses. Defendant has failed to overcome the presumption that defense counsel's conduct was the product of sound trial strategy. *Johnson*, 315 Mich App at 174; *Schrauben*, 314 Mich App at 190; *Dixon*, 263 Mich App at 398.

Further, even if his counsel's cross-examination of witnesses during the preliminary examination was objectively unreasonable, defendant would still be unable to prove prejudice. *Cooper*, 309 Mich App at 80; see also *Strickland*, 466 US at 694. Defendant was not prejudiced by counsel's decision not to cross-examine Lieutenant Vanderaa about his finding knives in defendant's pockets, because the CCW charges were dismissed before the case went to trial. Further, defendant has not explained how additional cross-examination of Investigator Hugle or JH would have changed the outcome of the proceedings. Both Investigator Hugle and JH presented specific testimony that defendant had digitally penetrated JH while she was asleep, and then resisted or obstructed Investigator Hugle during his arrest. There is nothing apparent on the record that suggests that further cross-examination during the preliminary examination would have resulted in defendant not being bound over to the circuit court. Defendant has not demonstrated a reasonable probability that, but for any errors by his counsel, the proceedings against him would have had different results. *Strickland*, 466 US at 694.

Defendant also argues that his counsel's cross-examination of JH was ineffective for an additional reason, i.e., that his counsel's only question implied that defendant had committed the digital penetration. However, as noted, JH had already testified that defendant digitally penetrated her vagina while she was sleeping. Defense counsel's question about whether anyone saw this event occur, while perhaps not perfectly crafted, certainly did not cause defendant prejudice. *Id.*

Lastly, defendant argues that his counsel failed to properly investigate the case, that proper investigation would have led to additional witnesses testifying at the preliminary examination, and that his counsel failed to meet with defendant before the preliminary examination. "The failure to reasonably investigate a case can constitute ineffective assistance of counsel." *People v Anderson*, 322 Mich App 622, 630; 912 NW2d 607 (2018). The defendant bears the burden of establishing the factual predicate for his claim of inadequate investigation. *Anderson*, 322 Mich App at 628.

Defendant has failed to establish the factual predicate for his claim. Although he claims a more thorough investigation by his counsel would have uncovered additional witnesses, he fails to identify any such witnesses or describe what their testimony would have been and how that would have benefited his case. *Id.* Regarding defendant's claim that his attorney failed to meet with him prior to the preliminary examination, defendant has not established the factual basis for this claim; further, defendant has not specified how he was prejudiced by his attorney's alleged failure to meet with him. As we have discussed, defendant's attorney was clearly versed in the facts of the case at the time of the preliminary examination, and employed a reasonable strategy

of pointing out a lack of corroborating evidence. We find defendant's argument to be without merit. *Id.*; *Anderson*, 322 Mich App at 628.

## C. ALLEGED CONSTITUTIONAL AND JURISDICTIONAL ERRORS—CIRCUIT COURT

Defendant, in his Standard 4 brief, also asserts that there were a number of errors, constitutional and otherwise, that resulted in the circuit court's loss of jurisdiction. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Generally, as noted, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Zitka*, 325 Mich App at 48 (quotation marks and citation omitted). Defendant challenges the circuit court's jurisdiction on two grounds—first, that the circuit court improperly tried him as a criminal when it was actually civil court by virtue of defendant's supposed status as a trust and contract, and second, that the circuit court improperly acted under maritime jurisdiction. As discussed earlier, defendant raised the issue of jurisdiction related to allegations that the circuit court was a civil court masquerading as a criminal court, along with the various associated arguments about contract and commercial law, with the circuit court, which motion was denied. Thus, that issue is preserved. *Id.* Defendant's argument regarding maritime jurisdiction, however, was not raised. However, "[j]urisdictional defects may be raised at any time." *Martinez*, 211 Mich App at 149. Consequently, we will still consider the issue, despite the lack of preservation. Next, defendant makes a constitutional argument regarding education and licensing of lawyers and judges, which was not raised with the lower court and therefore is not preserved for this Court's review. *Zitka*, 325 Mich App at 48.

See Section III.A.1. of this opinion for the applicable standards of review for preserved and unpreserved issues.

### 2. ANALYSIS

Defendant's arguments regarding the circuit court's jurisdiction and alleged constitutional violations are without merit and do not require reversal.

Defendant first argues that we must not hold him, as a pro se appellant, to the same standard to which we hold licensed attorneys. It is true that this Court has held that "because of the constitutional issues involved, a prisoner's pro se pleadings are held to a less stringent standard . . . ." *People v Herrera (On Remand)*, 204 Mich App 333, 339; 514 NW2d 543 (1994). Even so, this less-stringent standard does not change the requirement that defendant present some legally or factually meritorious grounds for reversal. See *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976).

Next, defendant makes two separate arguments regarding the circuit court's jurisdiction over him. Defendant first reiterates his argument (which we have already addressed and rejected in this opinion)—that the entire criminal justice system in Michigan state courts is a fraudulent scheme involving civil courts, administrative tribunals, contracts, the consent of the accused, trusts, and unproven debts. Second, defendant adds that the circuit court operated under maritime jurisdiction, which was not permitted because defendant was on land when the alleged crimes

occurred. We need not address either of these issues at length, as defendant has failed to provide binding legal authority in support of either of these propositions.

Our Supreme Court in *People v Goecke*, 457 Mich 442, 458-459; 579 NW2d 868 (1998), held that circuit courts have subject-matter jurisdiction over felony criminal cases, in general. *Id*. at 458. Further, "[i]n personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate . . . before whom the defendant had been examined." *Id*. (quotation marks and citation omitted). A review of the record in this case shows clearly that defendant underwent a preliminary examination in the district court, after which the district court found probable cause to believe that defendant had committed the charged crimes. Having so decided, the district court then bound defendant over to circuit court for trial on those charges. The prosecution subsequently filed a felony information, and the circuit court conducted an arraignment on the information. Considering those facts, it is clear that the circuit court had subject-matter jurisdiction over this case. *Id*. See also *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) ("Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases.").

Further, the circuit court also had personal jurisdiction over defendant because the district court conducted a preliminary examination and filed a return, binding over defendant's case for trial. *Goecke*, 457 Mich at 458. There is nothing in the record to suggest that any court involved in this case was relying on maritime jurisdiction. Rather, the facts as just discussed establish that the circuit court had both subject-matter and personal jurisdiction to consider defendant's case. *Id*.

## D. CONSTITUTIONAL CHALLENGES TO THE LEGAL SYSTEM AS A WHOLE

Defendant argues that the system for accreditation of lawyers and judges is unconstitutional because it provides for titles of nobility and creates a ruling class. For that argument, defendant first relies on the following pertinent language: "No Title of Nobility shall be granted by the United States." US Const, art I, § 9, cl 8. However, while creative, defendant has not supported with any legal authority his argument that an attorney, as a result of being licensed or becoming qualified to be a judge, becomes invested with a title of nobility. Indeed, in *Jackson v Florida*, opinion of the United States District Court for the Middle District of Florida, issued December 19, 2018 (Case No. 18-cv-259-FtM-29MRM), p 2, the court held that a lawyer's " 'title' as 'Esquire' does not implicate" US Const, art I, § 9, cl 8. Similarly, in *McIndoo v Broward Co*, 750 Fed Appx 816, 819 (CA 11, 2018), the United States Court of Appeals for the Eleventh Circuit held that a suit against a state judge "involves no title of nobility . . . that would implicate" the cited clause of the United States Constitution. Although those decisions are not binding, we consider them persuasive. Consequently, because the titles given to attorneys and judges are not titles of nobility, US Const, art I, § 9, cl 8, is not implicated, and thus, defendant's argument lacks merit.

Defendant also argues that the existence of licensure for attorneys and judges violates the following relevant portion of the United States Constitution: "The United States shall guarantee to every State in this Union a Republican Form of Government . . . ." US Const, art IV, § 4. When describing this "Republican Form of Government" guaranteed to Michigan's citizens, our Supreme Court explained that Michigan is "a constitutional *republic* in which we, as Michigan citizens, elect our representatives to local and state legislative bodies to enact our laws." *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 599; 822 NW2d 159 (2012) (opinion by MARY BETH KELLY, J.). In a similar vein, our Supreme Court has also stated that, "[o]f primary

importance to the viability of our republican system of government is the ability of elected representatives to act on behalf of the people through the exercise of their power to enact, amend, or repeal legislation." *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 660; 698 NW2d 350 (2005). From these cases, it is clear that the constitutional right to a "Republican Form of Government" is related to the legislative branch of the government. US Const, art IV, § 4; *Stand up for Democracy*, 492 Mich at 599; *Studier*, 472 Mich at 660. Defendant's analysis of the issue makes no allegation that the licensing procedures for attorneys and judges somehow violates a Michigan citizen's right to elect a representative to the Legislature. Consequently, contrary to defendant's argument, the existence of attorneys and judges in Michigan does not implicate US Const, art IV, § 4.

## E.  JURISDICTION OF THIS COURT

Lastly, defendant, in his Standard 4 brief, argues that we are required to determine whether we have been divested of jurisdiction by failing to ensure that defendant was not denied his right to due process. Because we have jurisdiction to hear this appeal, we disagree.

"Under MCR 7.203(A)(1), this Court has jurisdiction over '[a] final judgment or final order of the circuit court . . . .' " *People v Wiley*, 324 Mich App 130, 146; 919 NW2d 802 (2018). In criminal cases, a "final judgment" or "final order" includes "the original sentence imposed following conviction." MCR 7.202(6)(b)(ii).

Having already addressed defendant's previous arguments regarding jurisdiction and finding them to be without merit, we are left with a direct appeal by a defendant of the circuit court's judgment of sentence following his criminal convictions. Under the applicable court rules, MCR 7.203(A)(1) and 7.202(6)(b)(ii), and caselaw, *Wiley*, 324 Mich App at 146, this Court has jurisdiction over such an appeal. Defendant has not cited any authority that a denial of due process by a circuit court or district court, even if it actually existed, would deprive an appellate court of jurisdiction to hear his appeal. Indeed, if it did, defendant would be left without an avenue to challenge his convictions and assert his right to due process.

Moreover, to the extent that defendant argues that this Court has *already* denied him due process, defendant has failed to allege exactly what actions by this Court have deprived him of his constitutional rights, and has failed to provide authority that such a deprivation would divest this Court of jurisdiction. Defendant is not permitted "to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bass*, 317 Mich App 241, 276; 893 NW2d 140 (2016) (quotation marks and citation omitted). Defendant's argument is without merit.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood