*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant/Cross-Appellee,

v

SHERIKIA LAVETTE HAWKINS,

Defendant-Appellee/Cross-Appellant.

FOR PUBLICATION
January 20, 2022
9:00 a.m.

No. 357068
Oakland Circuit Court
LC No. 2020-274458

Before: SWARTZLE, P.J., and K. F. KELLY and REDFORD, JJ.

REDFORD, J.

In this interlocutory criminal appeal, the prosecution appeals by delayed leave granted the circuit court's order granting in part and denying in part defendant's motion to quash the bindover. The district court bound defendant over for trial for violation of the Michigan Election Law, MCL 168.1 *et seq.*, by falsifying election records (falsifying election records), MCL 168.932(c), falsely making, altering, forging or counterfeiting a public record (forgery), MCL 750.248, common-law misconduct in office, MCL 750.505, and three counts of use of a computer to commit a crime (use of a computer), MCL 752.796, each premised, respectively, on one of the first three offenses. The circuit court quashed the bindover respecting all charges but misconduct in office and the related use of a computer. The circuit court also denied defendant's later motion to dismiss the charges of misconduct in office and the related use of a computer which decision defendant cross-appeals.

For the reasons set forth in this opinion, we reverse the circuit court's order granting in part defendant's motion to quash the bindover, affirm the circuit court's order denying defendant's motion for dismissal, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. FACTS

This case arises from the November 6, 2018 general election in Southfield, Michigan. Defendant served as the elected City Clerk for Southfield. Among other things, she bore the responsibility for conducting elections. During the certification process conducted by the Oakland County Board of Canvassers (the Board) after the election, numerous discrepancies arose that led

-1-

to the discovery that defendant had changed voter records affecting 193 people who voted via absentee voter (AV) ballots.  At issue in this appeal is whether the district court abused its discretion in its decision to bind defendant over when it concluded that defendant's conduct constituted falsifying election records, forgery, or misconduct in office.

At the preliminary examination, Sally Williams, the Director of Elections for the Michigan Bureau of Elections, and Nichole Humphries, the Deputy City Clerk for the city of Southfield, testified regarding how AV ballots are processed and election officials track voting to ensure election integrity.  The Michigan Secretary of State (the Secretary) maintains the qualified voter file (QVF), a statewide computer database of registered voters, that is available to election officials throughout the state, which enables them to track the process by which people vote via AV ballots.  Specifically, a local election official indicates in the QVF the date an AV ballot application is received by the official, the date an AV ballot is sent to the voter, and the date an AV ballot is received by the official.  If an AV ballot received by an official is invalid for some reason—for example, the AV ballot envelope is unsigned or the signature does not match a voter's signature on file—such is noted in the QVF along with the date of receipt of the AV ballot and a code that indicates the reason for invalidation of the AV ballot.  By law, AV ballots may not be removed from the envelope in which they are returned until Election Day.  Local officials store the AV ballots until Election Day when they are sent to the appropriate location for tabulation.

Localities have two options for processing AV ballots on Election Day.  They may either sort the AV ballots by precinct and tabulate them at the corresponding poll site, or they may have one or more absentee voter counting boards (AVCBs) that tabulate AV ballots.  Southfield utilized the latter method for the 2018 general election, and it had two AVCBs for the 36 Southfield precincts.[1]  At the AVCB, the AV ballots, both those received before Election Day and those received by the close of the polls on Election Day, are processed by a tabulator.  Occasionally, a tabulator cannot process an AV ballot because of a defect.  For example, an AV ballot may be damaged in the mail or the barcode torn.  When such occurs, two election workers, one Democrat and one Republican, transfer the voter's votes to a new ballot that is then tabulated.  Once all AV ballots have been processed, the tabulator is closed out and its count is transferred to a computer via flash drive where unofficial results are transmitted to the county.  Election workers are responsible for printing a report from the QVF that indicates the number of AV ballots received by the close of the polls.  Election workers also complete a ballot summary for each precinct.[2]  The ballot summary indicates the number of AV ballots received, which information is gathered from the QVF report, and the number of ballots processed, which information is gathered from the tabulator.  Ideally, the numbers balance.  The QVF report and ballot summaries are included in AV ballot poll books.  Each precinct has one poll book solely for AV ballots.  The poll books are then given to the county board of canvassers to certify the election results.

Joseph Rozell, the Director of Elections for Oakland County, testified at the preliminary examination that he participated in the canvass of the 2018 general election conducted by the Board

---

[1] Humphries bore responsibility for overseeing the AVCBs on Election Day.

[2] Ballot summaries are done with carbon triplicates.  The local clerk keeps the original copy and the two duplicate copies are sent to the county clerk and county board of canvassers, respectively.

which began on November 9, 2018. Rozell discovered that the carbon copies of the ballot summaries for the 36 precincts that had been sent to the Board and the county clerk had not been completed. While the copies were sent to the appropriate entity, they were all blank. That prompted Rozell to contact defendant who indicated they were completed, so Rozell asked that she bring them to the Board. The Board also discovered that the tabulator data transmitted to the county at the end of Election Day for eight precincts indicated that no ballots were counted. Accordingly, defendant had to bring all ballots for those eight precincts to the county and tabulate them, which she did on November 13, 2018, and November 14, 2018. Defendant delivered the ballot summaries on November 15, 2018, along with a revised QVF report that Rozell and the Board had not requested.

The ballot summary form features a column of three boxes which identify the number of ballots delivered to the AVCB: Box A enables entry of the number of AV ballot envelopes delivered at opening of AVCB; Box B enables entry of additional AV ballot envelopes delivered by close of AVCB; and, Box C must specify the total number of AV ballot envelopes delivered. The ballot summary also features a column of four boxes which identify the number of ballots at the close of the AVCB: Box D features the number of AV ballots tabulated; Box E indicates the number of AV ballot envelopes delivered to the Board which did not contain a ballot; Box F shows the number of AV ballot envelopes delivered to the Board without a signature or otherwise invalid; and, Box G requires entry of the total number of AV ballots processed. The total numbers reported in Boxes C and G must agree. When done properly, "Ballots Returned" on the QVF report should be in Box C of the ballot summary, and Box C should equal Box G, the number of ballots processed by a tabulator. The canvas that is performed postelection must be completed within 14 days.

Rozell testified that the revised QVF reports defendant brought to him on November 15, 2018, matched Box C, and Box C matched Box G for each precinct. However, Ella Mills, one of Rozell's staff members, informed him that Precincts 35 and 36 had problems. It appeared that the number of ballots returned for Precinct 35 from the revised QVF report matched the number of ballots counted for Precinct 36, and vice versa. Accordingly, Rozell instructed Mills to locate the original QVF report that had been submitted on Election Day. Mills eventually found the original QVF report in a trash can in the Board's canvassing room. Mills testified that this was highly unusual because the Board does not throw away any documentation. Rozell testified that defendant had been in the canvassing room on November 15, 2018, when she brought in the ballot summaries and revised QVF report. Rozell and Mills compared the revised QVF report with the original and noticed that the number of ballots received identified on the revised QVF report was less than that on the original QVF report. Rozell, therefore, contacted the state Bureau of Elections (the BOE) for assistance to determine what happened.

Cynthia Wilkinson, a database architect for the BOE, ran a query to find all instances in which a Southfield AV ballot had been recorded in the QVF as received and accepted before or on Election Day but had been later recorded as not received or rejected for some reason other than arriving after Election Day. There were 193 such instances and each modification had been made by the same user: Sherikia@74900.[3] All modifications were done on November 14, 2018, and

---

[3] The Secretary has designated the city of Southfield as 74-900.

November 15, 2018. Rozell shared this information with the Board which then instructed defendant to turn over all AV ballots and envelopes. The Board physically counted every AV ballot and envelope for each precinct and again tabulated the ballots which Rozell put into a spreadsheet.

Rozell noticed multiple patterns in the ballot counts. First, for most precincts, the number of AV ballots physically counted and tabulated by the Board was consistent with the number of AV ballots the original QVF report indicated as received. Second, the number of AV ballots tabulated on Election Day did not match the number of AV ballots physically counted and tabulated by the Board. Third, the number of AV ballots in Precinct 2 that had to be duplicated because of issues with the original ballot equaled the number of AV voters removed from the QVF by defendant and the number of ballots that were not tabulated on Election Day. Rozell testified:

> What had happened was the ballots had been duplicated but the duplicated ballots had not been processed so not all of the votes had been counted in Southfield on election night. Not all of the absentee votes had been counted.

Rozell later testified that he did not know how many total duplicate AV ballots there were, but that he knew the number of duplicates in Precinct 2 matched the number of ballots not tabulated and the number of AV voters removed from the QVF in that precinct. Rozell concluded that, while damaged AV ballots had been duplicated, they had not been tabulated on Election Day. Rozell also randomly selected three of the AV ballots that had been changed from received and accepted to rejected for lack of a signature. In each case, the AV ballot envelopes included a signature revealing that defendant modified the QVF after Election Day to contain false information. Rozell testified that the number of voters removed in each precinct from the QVF list after the election equaled the number of ballots necessary to balance the number of ballots tabulated on election night.

## B. PROCEDURAL HISTORY

### 1. DISTRICT COURT BINDOVER DECISION

In deciding whether to bind defendant over on the charges, the district court first noted that to be entitled to a bindover for falsifying election records, the prosecution had to demonstrate probable cause to believe defendant was a city clerk, had lawful custody of an election record (in this case, the QVF), falsified information in the QVF, and acted with fraudulent intent. The district court found that probable cause existed to believe that defendant was the city clerk for Southfield and that she had modified the QVF after the election to falsely indicate that certain absentee ballots were returned without a signature. The district court also found that the prosecution demonstrated probable cause to believe that defendant committed forgery because the revised QVF report "was a forged document that was published to the board of canvassers," the QVF was a required list of voters, and the QVF was meant to be legal proof of the identities of individuals that voted via an AV ballot in the election. Addressing an argument that the charge of forgery should be dismissed because it was the same offense as falsifying election records for double-jeopardy purposes, the district court explained that the two offenses required proof of different elements. The district court, however, stated further:

> The prosecution need not show any intent pursuant to MCL 168.932(c). On the other hand MCL 750.248 [forgery] is applicable to any person who makes, alters or counterfeits a public record and requires the specific intent to harm or defraud another.

The district court found that probable cause existed to believe that defendant committed misconduct in office because defendant modified the QVF with a corrupt intent to make the number of AV ballots tabulated on Election Day match the QVF report. Finally, the district court found probable cause to believe that defendant used a computer to commit each of the above predicate offenses. The district court, therefore, bound defendant over to the circuit court on all charged offenses.

## 2. MOTION TO QUASH BINDOVER

On August 27, 2020, defendant moved the circuit court to quash the bindover. Defendant argued that the district court erred by binding her over on falsifying election records and forgery because no evidence indicated that she altered any vote and any alleged modification of the QVF did not make the QVF a forgery. Defendant argued that the district court erred by binding her over on misconduct in office and use of a computer since each were predicated on her alleged commission of falsifying election records and forgery. Defendant contended that forgery requires the creation of an instrument that purports to be what it is not, whereas, inclusion of some false information in an instrument does not turn such document into a forgery. She took the position that, even if she included some false information in the QVF, she had not created something that purported to be something else. Defendant also contended that the district court erred by not requiring the prosecution to show that she acted with an intent to defraud to establish probable cause to believe that she committed falsifying election records. She relied on the district court's statement that the "prosecution need not show any intent pursuant to MCL 168.932(c)." Defendant argued further that the district court erred by binding her over on common-law misconduct in office because the prosecution failed to present evidence of forgery, and misconduct in office cannot be charged when, as here, a statute already prohibited the charged conduct.

The prosecution opposed defendant's motion by arguing that the district court did not err respecting the charge of falsifying election records because the statute did not require proof of a forgery. The prosecution asserted that defendant's falsification of the QVF by changing the status of AV ballots sufficed. The prosecution argued that the district court did not err respecting the forgery charge because defendant modified the QVF to falsely reflect that some AV ballots were rejected, then printed the QVF and published it to the Board as part of the poll book, which represented an attestation that it may be received as legal proof of those who voted via AV ballots. The prosecution also explained that the district court did not err respecting the misconduct in office charge or use of a computer charge because sufficient evidence had been presented to support the court's probable cause findings for the offenses. The prosecution also pointed out that defendant did not merely make false entries in the QVF because she also generated a report from the QVF that she represented to be a list of those who voted via AV ballots which constituted the forgery of a public record. The prosecution also asserted that the district court clearly understood that falsifying election records required a showing of intent to defraud but merely misspoke when it considered defendant's argument that falsifying election records and forgery were the same offense for double-jeopardy purposes.

The circuit court held a hearing on defendant's motion to quash the bindover at which the parties argued consistently with their briefs. The court issued an opinion and order in which it concluded that the district court abused its discretion respecting the falsifying election records charge because it could not determine whether the district court understood that the prosecution had to establish an intent to defraud. Specifically, while the district court initially appeared to recognize the necessity of proof of an intent to defraud, the circuit court noted that the district court failed to make any findings on that element. Regarding forgery, the circuit court concluded that the district court erred because defendant's entry of false information into a public record did not change the nature of the record and therefore did not constitute a forgery.

The circuit court, however, concluded that the district court did not abuse its discretion by binding defendant over on the charge of misconduct in office because defendant corruptly altered the QVF to indicate the rejection of ballots that were in fact valid. The court ruled that the misconduct in office charge stood independent of the previous two counts because it did not rely on a forgery. The circuit court concluded that the district court abused its discretion regarding the counts of use of a computer predicated on falsifying election records and forgery but did not abuse its discretion regarding the count premised on misconduct in office. Accordingly, the circuit court quashed the bindover respecting falsifying election records, forgery, and the attendant use of a computer charges, but denied defendant's motion to quash the misconduct in office charge and the related one count of use of a computer.

### 3. MOTION TO DISMISS REMAINING TWO COUNTS

Later, defendant moved to dismiss the remaining two counts on the ground that the common-law misconduct in office offense[4] could not be based on conduct that is otherwise prohibited by law because an improper alteration of the QVF is statutorily prohibited under MCL 168.931(1)(h),[5] which makes it a misdemeanor to disobey a lawful instruction or order of

---

[4] MCL 750.505 provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

In *People v Waterstone*, 296 Mich App 121, 137; 818 NW2d 432 (2012) (quotation marks and citation omitted), this Court confirmed that misconduct in office as prosecuted under MCL 750.505 requires proof of "a corrupt intent [which] can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer." This Court reiterated that "it is deemed 'corrupt' for a public officer to purposely commit a violation of any duties associated with the officer's job or office." *Id*. at 137-138 (citations omitted).

[5] MCL 168.931(1)(h) makes it a misdemeanor under the Michigan Election Law for a person to "willfully fail to perform a duty imposed upon that person by this act, or disobey a lawful

-6-

the Secretary. Defendant argued that the misconduct in office charge should be dismissed along with the attendant count of use of a computer. Defendant relied on a number of statutory provisions and the election manual used by the Secretary to guide local election officials in the conduct of elections to argue that altering the QVF qualified as disobeying a lawful instruction or order of the Secretary falling within the ambit of MCL 168.931(1)(h).

In response, the prosecution argued that misconduct in office and MCL 168.931(1)(h) had different elements and, therefore, the latter did not preclude charging the former. Specifically, the prosecution argued that MCL 168.931(1)(h) applied to all persons upon whom a duty is imposed under the Michigan Election Law, not just public officers as is the case for misconduct in office.

At the hearing on the motion the circuit court advised that its decision regarding defendant's motion to quash the bindover as to misconduct in office and the attendant use of a computer was binding under the law-of-the-case doctrine. The court, therefore, denied defendant's motion.

This Court granted the prosecution's delayed application for leave to appeal the circuit court's order granting in part and denying in part defendant's motion to quash the bindover.[6] On appeal, the prosecution argues that the circuit court erred by partially quashing the bindover because it misinterpreted the district court's findings and failed to recognize that falsifying election records and forgery can be premised on a fraudulent alteration or a forgery. Defendant filed a claim of cross-appeal. In her appeal, defendant argues that the circuit court erred by denying her motion to dismiss because the elements of misconduct in office are identical with the elements of MCL 168.931(1)(h).

## II. STANDARDS OF REVIEW

In *People v Hudson*, 241 Mich App 268; 615 NW2d 784 (2000), this Court explained the applicable standard of review as follows:

> We review for an abuse of discretion a district court's decision to bind over a defendant. The standard for reviewing a decision for an abuse of discretion is narrow; the result must have been so violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias. A circuit court's decision with respect to a motion to quash a bindover order is not entitled to deference because this Court applies the same standard of review to this issue as the circuit court. This Court therefore essentially sits in the same position as the circuit court when determining whether the district court abused its discretion. In other words, this Court reviews the circuit court's decision regarding the motion to quash a bindover only to the extent that it is consistent with the district

---

instruction or order of the secretary of state as chief state election officer or of a board of county election commissioners, board of city election commissioners, or board of inspectors of election."

[6] *People v Hawkins*, unpublished order of the Court of Appeals, entered June 30, 2021 (Docket No. 357068).

court's exercise of discretion. The circuit court may only affirm a proper exercise of discretion and reverse an abuse of that discretion. Thus, in simple terms, we review the district court's original exercise of discretion. [*Id.* at 276 (quotation marks and citations omitted).]

We review "de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013) (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). Questions of statutory interpretation are reviewed de novo. *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295 (2010). "A trial court's decision to deny a motion to dismiss is reviewed for abuse of discretion, and a trial court necessarily abuses its discretion when it makes an error of law. Legal questions, including questions of statutory interpretation, are reviewed de novo." *People v Hofman*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 355838); slip op at 2 (quotation marks and citation omitted).

## III. ANALYSIS

### A. FALSIFICATION OF ELECTION RECORDS IN VIOLATION OF MCL 168.932(c)

The prosecution argues that the circuit court erred by quashing the bindover on the charge of falsifying election records because the district court understood the elements of the offense and the record evidence clearly supported the district court's bindover decision. We agree.

The district court conducts a preliminary examination to determine whether a felony has been committed and whether probable cause exists to believe that the defendant committed the felony. *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010). "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted). "Whether conduct falls within the scope of a penal statute is a question of statutory interpretation." *Flick*, 487 Mich at 8. In *Flick*, our Supreme Court recited the well-established principles that govern our interpretation of a statute:

The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. [*Id.* at 10-11 (quotation marks and citations omitted).]

Respecting statutory interpretation of provisions contained within the Penal Code, MCL 750.2 provides:

The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.

The prosecution charged defendant in Count 1 with falsifying election records in violation of MCL 168.932(c) which provides:

> A person who violates 1 or more of the following subdivisions is guilty of a felony:
>
> *   *   *
>
> (c) An inspector of election, clerk, or other officer or person having custody of any record, election list of voters, affidavit, return, statement of votes, certificates, poll book, or of any paper, document, or vote of any description, which pursuant to this act is directed to be made, filed, or preserved, shall not willfully destroy, mutilate, deface, falsify, or fraudulently remove or secrete any or all of those items, in whole or in part, or fraudulently make any entry, erasure, or alteration on any or all of those items, or permit any other person to do so.

In this case, to bind defendant over on the offense of falsifying election records in violation of MCL 168.932(c), the prosecution had to present evidence that defendant: (1) was a clerk; (2) had custody of a record, election list of voters, certificates, poll book, or of any paper, document, or vote of any description, which must be made, filed, or preserved under the Michigan Election Law; and (3) willfully falsified or fraudulently made any entry, erasure, or alteration on any or all of such items. "The intent to defraud is the specific intent to cheat or deceive." *People v Miller*, 326 Mich App 719, 739; 929 NW2d 821 (2019) (citation omitted).

To properly bind defendant over on this charge, the district court needed to find that evidence existed "regarding each element of the crime charged or evidence from which the elements may be inferred." *Hudson*, 241 Mich App at 278 (quotation marks and citation omitted). "If the evidence introduced at the preliminary examination conflicts or raises a reasonable doubt about the defendant's guilt, the magistrate must let the factfinder at trial resolve those questions of fact. This requires binding the defendant over for trial." *Id*. (citation omitted).

The record reflects that the prosecution presented evidence at the preliminary examination that, while conducting the canvas of the 2018 general election in Southfield, the Board discovered several discrepancies and evidence that not all AV ballots were counted at the Southfield AVCBs on Election Day. After Election Day, someone with the username "SHERIKIA@74900" changed 193 voter records in the QVF to indicate that either no AV ballot had been received from such voters, or for the AV ballots received, such ballots lacked a signature by Election Day. Defendant's first name is Sherikia, and 74900 refers to the Secretary of State's designation for Southfield. The district court could reasonably infer from this evidence that defendant willfully acted to change the QVF. While the number of AV ballots indicated as received on the QVF report sent to the Board on Election Day at the close of polls matched the number of ballots physically counted by the Board, the number of AV ballots indicated as received on the changed QVF report

that defendant submitted to the Board failed to match the number of ballots physically counted by the Board, and the total number of AV ballots indicated as received on the revised QVF report equaled less than that indicated on the original QVF report.

The record indicates that, in its decision following the preliminary examination, the district court made extensive findings based upon the admitted documentary evidence and the witnesses' testimonies. The district court correctly stated that to establish violation of MCL 168.932(c), the prosecution must establish:

> one, the defendant was a city clerk, two, as clerk the defendant had lawful custody of a record, in this case the Q.V.F., the defendant falsified information in the record and defendant acted with fraudulent intent when she falsified the record.

The district court then rendered its decision on Count 1:

> According to the evidence and testimony presented at the preliminary exam the defendant, city clerk for the city of Southfield, modified the Q.V.F. after the election to falsely indicate that certain absentee ballots were returned without signature. Therefore, the Court finds probable cause for Count 1 and probable cause that the defendant most likely committed the offense.

De novo review of the record in this case establishes that the district court, having fully examined the evidence, properly found that the prosecution presented evidence of each element of the charged offense of falsifying election records in violation of MCL 168.932(c). The record indicates that evidence established that: (1) defendant served as the Southfield clerk, (2) defendant had custody of election records which must be made, filed, or preserved under the election law, (3) defendant willfully falsified or fraudulently altered the QVF after the election to falsely report regarding AV ballots that were in fact received and valid. Accordingly, the district court properly exercised its discretion by binding defendant over for trial on Count 1. Respecting defendant's motion to quash, the circuit court had ample evidence in the record from which it could conclude that the prosecution met its burden of demonstrating that a crime had been committed and probable cause existed that defendant committed a violation of MCL 168.932(c) justifying the bindover on Count 1. Therefore, the circuit court erred by granting defendant's motion to quash Count 1.

Defendant argues that the circuit court did not err by quashing the bindover on Count 1 because, in relation to her double-jeopardy argument raised in the district court, the district court remarked that MCL 168.932(c) did not require the prosecution to prove intent, which she argues indicated that the district court's bindover ruling suffered from a fatal error of law, a conclusion with which the circuit court correctly agreed. The prosecution argues that the record evidence supported the district court's bindover decision and that the district court's statement when taken in proper context of the district court's comparative analysis of the elements of MCL 168.932(c) and MCL 750.248 for double-jeopardy purposes did not negate the record evidence that the

prosecution presented that satisfied each element of the falsification of election records in violation of MCL 168.932(c), and supported the district court's bindover decision.[7]

We are not persuaded by defendant's argument because the circuit court had the ability to determine by examining the extensive record before it that the district court had not abused its discretion by binding over defendant on Count 1 because the prosecution presented sufficient evidence of each element of the charged offense to show that a crime had been committed and that probable cause existed that defendant committed the charged offense. That the district court made an erroneous or confusing statement after the fact did not negate the record evidence that supported its earlier bindover decision.

The prosecution argues that the circuit court also erred by quashing the bindover on Count 1 because, to the extent that the circuit court needed clarification of the district court's bindover decision, it should have remanded the case to the district court to give it the opportunity to explain. Circuit courts have jurisdiction to remand to the district court even after granting a motion to quash. See *People v Miklovich*, 375 Mich 536, 539; 134 NW2d 720 (1965); *People v Kennedy*, 384 Mich 339; 183 NW2d 297 (1971). No authority appears to preclude a circuit court from exercising discretion to remand for further proceedings. Therefore, in its discretion, the circuit could have ordered the remand for further explanation by the district court. However, declining the exercise of such discretion is not, in and of itself, an abuse of discretion requiring reversal.

Defendant argues that the circuit court correctly quashed Count 1 because MCL 168.932(c) must be read as prohibiting forgery and she contends that, because her changes made to the QVF did not constitute a forgery she could not be bound over on that charge. She claims that her document modification did not make the QVF something different than it purported to be, and therefore, did not constitute a forgery. We disagree. Taken in its entirety, the evidence before the district court provided adequate evidence to bind over the charge that the actions of defendant purported to make the document something it was not, an accurate memorialization of what took place regarding the November 6, 2018 election as relates to absentee ballots and thus constituted a forgery.

Additionally, she argues that *People v Pinkney*, 501 Mich 259; 912 NW2d 535 (2018), stands for the proposition that MCL 168.932(c) is exclusively an election record forgery statute and therefore her conduct did not fall within the forgery prohibition. We disagree. *Pinkney* addressed the issue whether MCL 168.937 constituted a substantive offense or merely a punishment provision. Our Supreme Court held that the defendant could not be convicted under MCL 168.937 because it merely provided punishment but did not set forth a substantive offense. *Pinkney*, 501 Mich at 263. In doing so, the Court rejected the argument that the Legislature meant

---

[7] The prosecution offers a reasonable contextualization and interpretation of the district court's statement and the circuit court's confusion that led to quashing Count 1, but the record lacks clarity to permit accepting such speculation. We conclude that determination of the propriety of the district court's bindover decision requires de novo review of the record, and based upon such record review we conclude that the district court did not abuse its discretion. Therefore, the circuit court erred.

for common law to provide the substantive elements of forgery in MCL 168.937 because "a reasonable person would believe that 'forgery under the provisions of this act' suggests that he or she could only be found guilty of a forgery crime defined elsewhere in the Election Law." *Pinkney*, 501 Mich at 276, quoting MCL 168.937. The Court reviewed the legislative history of relevant provisions of the Michigan Election Law, including MCL 168.932, to support its conclusion. The Court observed from that historical analysis that its predecessor, 1948 CL 195.8, originated in 1917 PA 126, ch 2, § 8, the first statute in which the substantive forgery crime was independent of the penalty provision. *Id*. at 279 n 48.

*Pinkney* did not interpret the substance or breadth of the conduct prohibited under MCL 168.932(c). The Court merely discussed the provision in passing as further support for its conclusion that MCL 168.937 provided a penalty provision for forgery offenses defined elsewhere in the election law. Although the Court referred to MCL 168.932(c) as an "election-related forgery prohibition," it did so in the context of its interpretation of MCL 168.937. Nowhere in *Pinkney*, however, did the Court definitively state that MCL 168.932(c) only prohibits election record forgery. The plain language of MCL 168.932(c) does not identify forgery specifically as the prohibited conduct but specifies that a clerk, like defendant, "shall not willfully destroy, mutilate, deface, falsify, or fraudulently remove or secrete any [election records], in whole or in part, or fraudulently make any entry, erasure, or alteration on any or all of those items, or permit any other person to do so." The statute obviously prohibits more than the forgery of election records. The statute must be construed according to the fair import of its terms. MCL 750.2. Defendant's argument fails because the statute cannot be interpreted in the narrow manner she desires and *Pinkney* does not support her contention.

The prosecution had to demonstrate that defendant acted in a manner prohibited by the statute. In this case, the record reflects that the prosecution presented evidence that defendant, Southfield's clerk, falsified election records that the election law required to be made, filed, or preserved. Witnesses' testimonies and documentary evidence supported the district court's conclusion that MCL 168.932(c) had been violated and that probable cause existed that defendant committed the charged offense. Specifically, the evidence supported the conclusion that defendant willfully falsely altered entries in the QVF by indicating AV ballots received and accepted were either not received or not accepted because they had no signature by Election Day. She did this after the election but while the Board attempted to canvass the votes and certify the election. Evidence presented by the prosecution indicated that defendant made and submitted a false copy of the QVF, and disposed of the original, when she knew that the Board worked to verify the results of the Southfield election to ensure the integrity of it. From this, a reasonably prudent and conscientious person could believe that defendant intended to deceive the Board. *Miller*, 326 Mich App at 739.

Defendant asserts that no evidence established that the election results would have been different if the 193 AV ballots that were not tabulated on Election Day continued to go uncounted. MCL 168.932(c), however, does not require proof that defendant intended to alter the results of an election nor does the statute require proof that she achieved altering the results of an election. Evidence of defendant's intent to deceive the Board, such that the canvass would not reveal that some valid AV ballots went uncounted, sufficed. Moreover, the statute cannot properly be interpreted in the manner defendant argues. Such a reading would be counter to the plain language

of the statute, which requires a willful falsification or fraudulent entry, alteration, or erasure of an election record.  Accordingly, the circuit court erred by quashing the bindover on Count 1.

Defendant also argues that the circuit court's decision to quash the bindover on Count 1 should be affirmed on appeal because the prosecution committed misconduct by failing to disclose the Rozell spreadsheet.  Defendant appears to argue that this Court should affirm the circuit court's erroneous quashing of the bindover as a sanction for the prosecution's conduct.  We disagree.

In *People v Burger*, 331 Mich App 504; 953 NW2d 424 (2020), this Court recently explained:

> Generally, a criminal defendant does not have a constitutional right to discovery.  However, a defendant's right to due process may be violated by the prosecution's failure to produce exculpatory evidence in its possession.  [*Id*. at 518 (quotation marks and citation omitted).]

MCR 6.201 provides for discovery in criminal cases.  MCR 6.201(B)(1) specifies that the prosecution must provide a defendant discovery of any exculpatory information or evidence known to the prosecuting attorney, and Subpart (H) imposes a continuing duty of disclosure upon parties that discover additional discoverable information or material at any time.  MCR 6.201(J) addresses a violation of the rules regarding discovery in criminal proceedings as follows:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.  Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity.  Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.  An order of the court under this section is reviewable only for abuse of discretion.

Subpart (J) plainly indicates that the presiding lower court has discretion to address and decide discovery issues in criminal proceedings.  The rule, however, does not authorize appellate court's to sanction parties after the fact.

The record in this case reflects that Rozell created a spreadsheet and gave it to the Secretary of State's office and may have provided a copy to the prosecution which may have used it for preparing him to testify at the preliminary examination.  The record indicates that defense counsel informed the district court that he did not have the spreadsheet, and the prosecution represented to the court that it did not believe that it had a copy or had seen it.  Defense counsel argued that the prosecution had an obligation to share all exculpatory evidence and should be required to engage in further efforts to locate and turn over the spreadsheet, to which the prosecution agreed but stated that the spreadsheet was unnecessary to conduct the preliminary examination.  Despite additional discussion regarding the existence of the spreadsheet between the court, the prosecution, and defense counsel, not until later in his testimony did Rozell inform defense counsel during further cross-examination that he had a copy of the spreadsheet with him.  The district court took a brief

recess, and both parties received a copy of the spreadsheet. Defense counsel moved for and the district court granted an adjournment to permit defendant's review of the spreadsheet to determine its contents that might prove beneficial and permit defense counsel's use for cross-examination. When the preliminary examination resumed over 2½ months later, defense counsel cross-examined Rozell extensively about the spreadsheet's preparation and contents and defendant moved for its admission. The district court granted the document's admission without objection.

The record reflects that the district court exercised its discretion regarding the discovery issue raised by defendant and granted defendant a lengthy continuance sufficient for defense counsel to analyze Rozell's spreadsheet. The record indicates that the spreadsheet enabled defense counsel to develop cross-examination of Rozell regarding that evidence. The record, however, is unclear whether the spreadsheet contained exculpatory evidence. Additionally, the spreadsheet does not appear to have served to impeach Rozell's credibility or cast doubt on the evidence he summarized in the spreadsheet.

Defendant argued below as she does on appeal that the circuit court could draw an adverse inference from the prosecution's failure to turn over the spreadsheet, which defendant argues contained relevant and exculpatory evidence that the district court had ordered to be turned over. Defendant offers little legal citation in support of her argument. Defendant cites *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997), which expresses the general proposition that Michigan courts have inherent power to sanction civil litigant misconduct. Defendant also cites *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014), a case in which our Supreme Court clarified the test for a claim of a *Brady*[8] violation, i.e., that: (1) the prosecution suppressed evidence; (2) that is favorable to the accused; and (3) that is material. In *Chenault*, the Court explained:

> The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith. Evidence is favorable to the defense when it is either exculpatory or impeaching. To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Quotation marks and citations omitted.]

The Court concluded that the "question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 150-151 (quotation marks and citation omitted; emphasis added). The Court rejected the imposition of an additional due diligence factor upon a defendant in determining whether the defendant has made out a *Brady* violation.

Contrary to defendant's assertions, the propositions of law expressed in *Brenner* and *Chenault* do not apply in this case because the district court dealt with the prosecution's failure to disclose the Rozell spreadsheet by granting defendant an adjournment and time to analyze that

---

[8] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

-14-

evidence and use it to the extent that it provided any benefit to defendant. Having obtained the evidence and having used it, we do not conclude that the district court erred because it corrected the potential of any due-process violation and prevented any unfairness in the preliminary examination proceeding. Nor are we convinced that, under the circumstance, the circuit court could draw an adverse inference because defendant ultimately had not been deprived of the spreadsheet, prevented from using it, or subjected to an unfair proceeding that undermined the confidence in the outcome of the preliminary examination proceeding. "An adverse inference permits the fact-finder to conclude that the missing evidence would have been adverse to the opposing party." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 24; 930 NW2d 393 (2018). Here, the evidence did not remain missing and its contents were fully revealed and used by defendant before the district court made its bindover decision. The district court properly dealt with the discovery issue. The prosecution's misconduct is not grounds for affirming the circuit court's erroneous ruling.

B. FALSIFICATION OF A PUBLIC RECORD IN VIOLATION OF MCL 750.248(1)

The prosecution argues that the circuit court erred by quashing the bindover on Count 2 because the record evidence supported the district court's bindover decision. We agree.

The prosecution charged defendant with violation of MCL 750.248(1), which states in relevant part:

> A person who falsely makes, alters, forges, or counterfeits a public record, or a certificate, return, or attestation of a clerk of a court, register of deeds, notary public, township clerk, or any other public officer, in relation to a matter in which the certificate, return, or attestation may be received as legal proof, . . . with intent to injure or defraud another person is guilty of a felony punishable by imprisonment for not more than 14 years.

The prosecution argues that the circuit court erred by quashing the bindover respecting this count because evidence showed that defendant violated MCL 750.248(1) by generating a false QVF that she submitted as a list of all voters who submitted an AV ballot which actually omitted 193 valid AV ballots. The prosecution argues that MCL 750.248(1) prohibits altering public records in addition to forging public records. The prosecution concedes that a forgery requires making an instrument that purports to be something it is not, but argues that, even if defendant did not "forge" a public record, she altered one by removing the 193 names from the QVF.

MCL 750.248(1) is often referred to as the offense of forgery, but the plain language of the statute reveals that it explicitly targets not only document forgers but also persons who falsely make, alter, or counterfeit a public record. The prosecution correctly points out that the statute prohibits alterations of public records *and* forgeries of public records. In *People v Johnson-El*, 299 Mich App 648; 831 NW2d 478 (2013), this Court stated:

> MCL 750.248(1) proscribes forgery as follows: A person who falsely makes, alters, forges, or counterfeits a public record . . . with intent to injure or defraud another person is guilty of a felony[.] The elements of the crime of forgery are: (1) an act which results in the false making or alteration of an instrument (which

makes an instrument appear to be what it is not); and (2) a concurrent intent to defraud or injure. The key is that the writing itself is a lie. [*Id*. at 651 (quotation marks and citation omitted; alteration in original).]

In this case, the record evidence indicates that defendant created a second QVF and submitted it to the Board that purported to be a complete and accurate list of people who voted via AV ballot. That QVF, however, presented a false alteration of the correct QVF information. Defendant argues that she cannot be found to have violated MCL 750.248(1) because she only altered a relatively small percentage of the QVF's entries. She contends that her falsification of a portion of the QVF data cannot be construed as a forgery because it did not make the document appear to be what it is not, and therefore, the prosecution failed and could not establish a necessary element of the charged offense. In essence, she takes the position that, to be bound over on the charge, the prosecution had to establish that she falsified the entire document.

The circuit court agreed and concluded that "the entry of false information into a public record does not change the nature or genuineness of the document such that it is not a forgery." The circuit court, however, misread the statute as proscribing only acts of complete falsification of a document. The plain language of the statute makes clear that a variety of acts including falsification or alteration, fall within the ambit of the proscribed conduct and the statute does not require a complete falsification of a document. For example, the falsification alone of an attestation by a clerk of court, register of deeds, notary public, township clerk, or any other public officer constitutes a violation of the statute. The statute does not require the falsification of the entire public record bearing the false attestation.

Moreover, in this case, record evidence indicates that defendant's fraudulent act of falsifying the QVF made that altered election record appear to be what it certainly was not, an accurate report regarding the AV ballots. In so doing, defendant created a document that lied about the validity of 193 voters' AV ballots. Such conduct falls within the ambit of MCL 750.248(1).

In making its bindover ruling respecting Count 2, the district court explained:

The evidence shows that the defendant changed the Q.V.F. after the election to falsely reflect that certain absentee ballots were rejected as having no signature and then ran a new list of people who voted during the election. This new list was a forged document that was published to the board of canvassers. The list of voters is a required part of the poll book and is reviewed as an attestation that it is to be received as part of the legal proof of the identities of individuals that voted by absentee ballot during the election. Therefore, the Court finds probable cause that the crime of forgery of a public record occurred and probable cause that the defendant most likely committed the offense.

The district court properly analyzed the evidence and properly bound defendant over on Count 2 because the prosecution presented evidence that defendant violated MCL 750.248(1) by falsely making and altering the QVF public record with the intent to defraud, i.e., deceive, the Board. The circuit court, therefore, erred by quashing Count 2.

## C. THE COMPUTER CRIMES RELATED TO COUNTS 1 AND 2

The prosecution argues that the circuit court erred by quashing the bindover respecting the two counts of use of a computer related to Counts 1 and 2. We agree.

MCL 752.796(1) provides: "A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime." Thus, the computer crime has two elements: (1) the commission, attempted commission, conspiracy to commit, or solicitation of a crime; and, (2) through the use of a computer. In this case, the record reflects that the prosecution presented evidence that defendant violated MCL 168.932(c) and MCL 750.248(1) through the use of a computer. The circuit court erroneously quashed the two counts of use of a computer because it erroneously concluded that the district court abused its discretion by binding over defendant to face trial for the predicate offenses, the violations of MCL 168.932(c) and MCL 750.248(1). Because the circuit court erred by quashing the bindover on those two underlying offenses, it necessarily erred by quashing the two related use of a computer counts. The evidence supported the district court's ruling that crimes had been committed and that probable cause existed to believe that defendant committed violations of MCL 168.932(c) and MCL 750.248(1) by using a computer to alter and falsify the QVF.

## D. DENIAL OF DEFENDANT'S MOTION TO DISMISS

Defendant argues in her cross-appeal that the circuit court erred by failing to dismiss Count 3 which charged defendant with common-law misconduct in office in violation of MCL 750.505, on the ground that MCL 168.931(1)(h) statutorily prohibits the same conduct alleged in Count 3 which precludes her being charged and tried for a common-law offense. We disagree.

As a preliminary matter, we address defendant's argument that the circuit court erred by denying her motion to dismiss Count 3 on the ground that the law-of-the-case doctrine governed and precluded it from ruling differently than the court had previously ruled on her motion to quash. The prosecution concedes that the law-of-the-case doctrine did not preclude the circuit court from considering and deciding defendant's motion to dismiss. This Court reviews de novo whether the law-of-the-case doctrine applied. *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013). The law-of-the-case doctrine is intended to promote efficiency, comity, and finality in the law. *Locricchio v Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991). Generally, the doctrine provides that an appellate court's final determination on a matter of law binds both the lower court on remand and the appellate courts in later appeals of the same case. *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000). Some cases like *People v Mitchell*, 231 Mich App 335, 340; 586 NW2d 119 (1998), have stated that the law-of-the-case doctrine bars reconsideration of an issue decided "by an equal or subordinate court during subsequent proceedings in the same case[,]" but analysis of such cases indicates that the doctrine applies to courts after an appellate court has rendered judgment on a legal issue, and not where a subordinate court has ruled on an issue and a party moves for different relief in the same case, as happened here. We agree with both defendant and the prosecution that the doctrine did not apply in this case. Although circuit courts occasionally act as appellate courts for district court decisions, such was not the case here respecting defendant's motion to quash the bindover. "[C]ircuit courts have original jurisdiction over all criminal cases involving felonies." *People v Scott*, 275 Mich

App 521, 523 n 1; 739 NW2d 702 (2007). The circuit court's resolution of defendant's motion to quash the bindover did not establish the law of the case. The law-of-the-case doctrine only applies when an appellate court has ruled on the merits of the issue presented. Defendant raised a new issue in her motion to dismiss. Therefore, even if the circuit court could be deemed to have functioned as an appellate court, the law-of-the-case doctrine did not apply.

The prosecution argues that this Court should remand to the circuit court for it to address the merits of defendant's argument. Although we could do so, defendant preserved the issue and has properly presented it to this Court for consideration. See *People v Zitka*, 325 Mich App 38, 48; 922 NW2d 696 (2018) (explaining that "if an issue is raised before the trial court and is pursued on appeal, this Court is not foreclosed from reviewing it even if it was not decided by the trial court."). Accordingly, we may address the merits of defendant's argument.

Turning to the merits of her motion to dismiss, defendant argues that she could not be charged with misconduct in office under MCL 750.505 because the elements of that offense are the same as the elements of MCL 168.931(1)(h). We disagree.

Misconduct in office was an indictable offense at common law. *Waterstone*, 296 Mich App at 133. In *Waterstone*, this Court explained:

> An indictable common-law offense can be charged by the prosecution pursuant to MCL 750.505 unless punishment for that offense is otherwise expressly provided for by statute. It is proper to dismiss a charge brought under MCL 750.505 if the charge sets forth all the elements of [a] statutory offense. [*Id*. at 134 (quotation marks, ellipsis, and citation omitted)].

Under MCL 750.505, "[a]ny person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony." In *People v Perkins*, 468 Mich 448, 456; 662 NW2d 727 (2003), our Supreme Court explained:

> At common law, misconduct in office was defined as "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." An officer could be convicted of misconduct in office (1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance.
>
> However, committing nonfeasance or acts of malfeasance or misfeasance are not enough to constitute misconduct in office. In the case of malfeasance and misfeasance, the offender also must act with a corrupt intent, i.e., with a "sense of depravity, perversion or taint." In the case of nonfeasance, an offender must willfully neglect to perform the duties of his office. [Citations omitted.]

Consistent with MCL 750.505, when a statutory offense sets forth all the elements of the common-law offense, the common-law offense is precluded. *People v Thomas*, 438 Mich 448, 453; 475 NW2d 288 (1991).

MCL 168.931(1)(h) provides:

> A person shall not willfully fail to perform a duty imposed upon that person by this act, or disobey a lawful instruction or order of the secretary of state as chief state election officer or of a board of county election commissioners, board of city election commissioners, or board of inspectors of election.

MCL 168.931(1)(h) does not foreclose the prosecution of a defendant for misconduct in office because the elements of the offenses are different. First, misconduct in office requires proof that the defendant acted while a public officer. *Perkins*, 468 Mich at 457. By contrast, MCL 168.931(1)(h) may be violated by any person with "a duty imposed upon that person by" the Michigan Election Law. Second, and relatedly, MCL 168.931(1)(h) prohibits the breach of a duty owed under the Michigan Election Law, while misconduct in office may be premised on a breach of any duty owed as a result of one's status as a public officer. Therefore, the elements of misconduct in office differ from the elements required to prove a violation of MCL 168.931(1)(h). Therefore, a misconduct in office charge under MCL 750.505 is not foreclosed by an Election Law charge under MCL 168.931(1)(h).[9] Accordingly, defendant was not entitled to dismissal of the charge of misconduct in office. Correspondingly, defendant was also not entitled to dismissal of the use of a computer charge related to the misconduct in office offense. The circuit court, therefore, reached the right result, albeit for the wrong reason. This Court will not reverse where a lower court reaches the right result for the wrong reason. *People v Ramsdell*, 230 Mich App 386, 406; 585 NW2d 1 (1998).

## IV. CONCLUSION

For these reasons, we reverse the circuit court's order granting in part defendant's motion to quash the bindover respecting Counts 1, 2, 3, and 4, affirm the circuit court's order denying defendant's motion for dismissal, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly

---

[9] Defendant raised in her reply brief on appeal for the first time that MCL 168.931(2) forecloses a charge of misconduct in office if MCL 168.931(1)(h) does not. We disagree because the same substantive analysis respecting MCL 168.931(1)(h) applies to MCL 168.931(2) and a misconduct in office charge under MCL 750.505 is not foreclosed by an Election Law charge under MCL 168.931(1)(h) or MCL 168.931(2).