*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID ALLAN REED,

Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 358667
Genesee Circuit Court
LC No. 18-043316-FC

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

PER CURIAM.

The evidence presented at the trial of defendant, David Allan Reed, convinced the jury that he killed his girlfriend, Ranee McKelvey, by choking her and then he tried to burn down her house with her lifeless body and her dog in it. Defendant was convicted of second-degree murder, MCL 750.317, preparation to burn a dwelling, MCL 750.79(1)(d)(*vi*), and torturing of an animal, MCL 750.50b. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve concurrent prison terms of 50 to 100 years for second-degree murder, 15 to 30 years for preparation to burn a dwelling, and 4 to 15 years for torturing of an animal. We affirm.

## I. FACTUAL BACKGROUND

In February 2018, defendant choked Ranee McKelvey to death in Grand Blanc Township. Defendant and McKelvey had been dating for approximately five months at the time of her death. When she did not show up for work on the morning of February 11, 2018, a neighbor and a relative went to look for her. When they arrived at her house, they detected a smell of natural gas and saw a burning candle on a table in the living room. Inside the house, they found her lifeless body lying on the bed in her bedroom. Her pet dog was also inside the house, but was not harmed. An autopsy revealed that she died by strangulation. Police officers discovered that the stove in the house had been pulled away from the wall and the gas valve had been left in the "on" position. Also, a burned cigarette was found on a chair that was burned. On the night before McKelvey's body was found, defendant had sent text messages to a friend stating that he was "fighting with my bitch" and "bitch will learn."

Defendant was arrested on February 12, 2018, in Detroit, where he had driven in a van that belonged to the victim. Defendant made a statement to the police in which he described McKelvey as "tough" and said she likes to "play rough." He claimed he was demonstrating some self-defense techniques to McKelvey when he put her in a chokehold as part of his demonstration. She stopped breathing and his attempt to revive her was unsuccessful. Defendant denied trying to set anything on fire, but he acknowledged that he moved the stove, asserting he did so when he was defrosting the refrigerator. DNA that matched defendant's DNA profile was found on the gas valve.

Defendant was charged with open murder, preparation to burn a dwelling, and torture of an animal. The prosecution's theory at trial was that defendant became angry with McKelvey and killed her by strangling her, and then he removed the gas stove from the wall, opened the gas valve, and left a burning cigarette and a lighted candle intending to burn the house to cover up his actions. The defense argued at trial that McKelvey died accidently. The prosecution offered evidence that defendant was involved in a relationship with another woman in 2006 when he became angry with her and assaulted her, including choking her until she lost consciousness. The jury found defendant guilty of second-degree murder, preparation to burn a dwelling, and torture of an animal. The trial court subsequently imposed concurrent prison terms for those three crimes. Defendant appealed, challenging his convictions, but not his sentences.

## II. LEGAL ANALYSIS

Defendant presents three issues on appeal. First, he contends that the trial court erred when it admitted evidence under MRE 404(b) regarding defendant's assault of a girlfriend other than the victim in this case. Second, he asserts that the trial court impermissibly admitted prior testimony of that other girlfriend under MRE 804(b)(1). Third, he argues that his defense attorney provided ineffective assistance at trial. We will address those three issues in turn, and then we will take up several arguments made by defendant in his Standard 4 brief.[1]

## A. ADMISSION OF OTHER-ACTS EVIDENCE

Defendant asserts the trial court erred by admitting evidence of his prior assault of Vanessa Reeves under MRE 404(b)(1) to prove defendant's "absence of mistake or accident" in the choking death of Ranee McKelvey. "A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id*. A trial court commits an abuse of discretion "when it admits evidence that is inadmissible as a matter of law." *Id*.

"MRE 404(b) governs the admissibility of other-acts evidence." *Id*. As a general principle under MRE 404(b), "evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *Id*. "Such evidence may, however, be admissible for other purposes under MRE 404(b)," such as establishing " 'absence of mistake or accident' " when that is material. *Id*.

---

[1] "A 'Standard 4' brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005)." *People v Lowrey*, 342 Mich App 99, 103 n 1; 993 NW2d 62 (2022).

To determine whether "other-acts evidence may be admissible for . . . nonpropensity purposes[,]" we must address four requirements: (1) whether the evidence is offered for a proper purpose under MCR 404(b); (2) whether the evidence is relevant under MRE 402; (3) whether the probative value of the evidence is not substantially outweighed by unfair prejudice; and (4) whether the trial court gave a limiting instruction to the jury. *Id*.

Here, the prosecution presented the testimony of defendant's former girlfriend to establish "absence of mistake or accident," which is a proper, noncharacter purpose under MRE 404(b)(1). Indeed, the trial court determined that the evidence was being offered for a proper purpose, i.e., to undermine defendant's argument that McKelvey died by accident. When defendant submitted to questioning by law-enforcement officers in the wake of McKelvey's death, he explained that her death by choking was "accidental." Similarly, during his opening statement, defense counsel told the jury "that tragically and unexpectedly and unintentionally, Ms. McKelvey, Ranee's airway was cut off during the demonstration of some defense techniques." Because the defense proceeded on a theory of accident, the trial court did not abuse its discretion by determining that the first prong of the four-part test was satisfied.

Logical relevance, as contemplated by the second prong of the analysis, encompasses both materiality and probative value and is determined by referring to MRE 401 and MRE 402. *Denson*, 500 Mich at 400-401. Materiality requires that the other-acts evidence must be related to "any fact that is of consequence" to the action, and evidence has probative value if it tends to make any fact of consequence to the determination of the case more or less probable than it would be without the evidence. *Id*. at 401-402. In other words, the evidence must be probative of a material issue other than the defendant's propensity to engage in the crime charged. *Id*. at 402.

The trial court correctly determined that Reeves's testimony was logically relevant under the second prong of the analysis because it satisfied the requirements of materiality and probative value. Defendant was charged with open murder. The central issue at trial was whether the death of defendant's girlfriend was an intentional killing or a tragic accident. Notably, defendant claimed in his statement to the police and in his attorney's opening statement to the jurors that his girlfriend died accidently while he was teaching her a self-defense technique by placing her in a chokehold. But evidence at trial showed that defendant was angry with his girlfriend and the two were fighting. On the night of February 10, 2018, defendant sent text messages to a friend in which he stated that he was "fighting with my bitch" and "bitch will learn." Accordingly, whether his girlfriend's death was accidental was a material issue at his trial, so the testimony of Reeves—his former girlfriend— was probative of the plausibility of defendant's claim that his girlfriend's death was simply a tragic accident. The testimony showed that defendant had previously choked another woman with whom he was involved in a relationship when he became angry, causing her to lose consciousness. That testimony was logically relevant to establish that it was more probable that his girlfriend's death, which resulted under similar circumstances, was not accidental. Thus, the trial court did not abuse its discretion by concluding that the evidence was logically relevant.

We also conclude that the trial court did not abuse its discretion by admitting the evidence under MRE 403, which states that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Our Supreme Court has explained that MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). In addition, our Supreme Court

has reasoned that determinations under MRE 403 are more appropriately reserved to the trial court, which is in a better position to assess the presentation, credibility, and effect of other-acts evidence offered at trial. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Although the evidence of defendant's prior assault against Reeves was harmful to his case, it was not unfairly prejudicial. Defendant placed in issue whether his girlfriend's death by choking was accidental. Because Reeves—like defendant's girlfriend—was involved in a relationship with defendant when defendant became angry with her, her testimony that defendant reacted by choking her in that situation had significant probative value in determining whether defendant's girlfriend's strangulation death under similar circumstances was intentional or accidental. Furthermore, any prejudice to defendant was mitigated by the trial court's admission of Reeves's unsworn affidavit in which she recanted the portion of her testimony in which she stated that defendant also assaulted her with a firearm. Beyond that, the trial court admitted into evidence Reeves's correspondence to defendant while he was in prison when she apologized to defendant and asked for his forgiveness for taking away his freedom.[2] Thus, the trial court did not abuse its discretion by deciding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

Finally, the fourth prong of the analysis focuses on whether the jurors were given a limiting instruction to ameliorate the risk of unfair prejudice by explaining to the jurors "that the jury may consider the evidence only for proper, noncharacter purposes." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). Here, the trial court instructed the jury on two separate occasions on the limited, permissible use of Reeves's testimony. First, before Reeves's testimony was read, the trial court cogently and expansively explained the restrictions on the use of that testimony. Second, in its final instructions, the trial court reminded the jurors of those restrictions. The trial court also instructed the jury that it could not consider Reeves's testimony to determine that defendant was a violent person who had a propensity to commit violent acts. Those instructions were sufficient to alleviate any unfair prejudice and protect defendant's right to a fair trial.

## B. ADMISSION OF FORMER TESTIMONY

On the second day of defendant's eight-day trial, the prosecution introduced the testimony of Reeves from March 7, 2007, in a previous criminal prosecution of defendant that took place in Wayne Circuit Court.[3] The trial court gave the jury a thorough explanation of the evidence, noting that "[i]t has to be done this way because Ms. Reeves is deceased and she's not able to be here to give testimony." Although the trial court went out of its way to ensure a fair understanding of the former testimony, stating to the jury that "her being deceased has nothing to do with this case" and "nothing to do with [defendant] here[,]" defendant argues that the trial court erred in admitting the testimony pursuant to MRE 804(b)(1). The trial court's decision is subject to review for an abuse of discretion. *People v Farquharson*, 274 Mich App 268, 271; 731 NW2d 797 (2007).

---

[2] The trial court and counsel for the competing parties worked out an agreement for the admission of those materials during a pretrial conference on June 3, 2021.

[3] Reeves provided that testimony at a criminal trial of defendant, who entered a plea of no contest after Reeves testified against him.

-4-

According to MRE 804(b)(1), former testimony from an unavailable witness is admissible over a hearsay objection if the objecting party or a "predecessor in interest . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Defendant concedes that Reeves was unavailable as a witness in this case because of her death, but defendant nonetheless argues that her testimony should have been excluded because neither defendant nor a "predecessor in interest" had an opportunity and similar motive to develop Reeves's testimony on the subject of defendant's choking of her. In *Farquharson*, 274 Mich App at 278, this Court stated that in determining whether a party had a similar motive to examine a witness at a prior proceeding, the following factors should be considered:

> (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities).

Applying these factors, we conclude that the trial court did not abuse its discretion by determining that Reeves's prior testimony was admissible under MRE 804(b)(1).

In the prior proceeding, which was a criminal trial of defendant on a charge of assault with intent to do great bodily harm less than murder, defendant manifestly had an interest in disproving Reeves's allegations to avoid conviction on that charge. At that trial, defendant faced a loss of his liberty, and the prosecution was obligated to prove defendant's guilt on the charged crime beyond a reasonable doubt. Finally, a review of Reeves's prior testimony reveals that defendant's counsel at that previous trial vigorously cross-examined Reeves. In particular, counsel questioned Reeves about the hand in which defendant held a gun when the assault started. Counsel also asked Reeves about her testimony at the preliminary examination. Further, counsel questioned Reeves about the circumstances of the assault and how it transpired, including how defendant choked her until she lost consciousness. Accordingly, because defendant had ample opportunity and a similar motive to develop Reeves's testimony on cross-examination, the trial court did not abuse its discretion by admitting Reeves's former testimony under MRE 804(b)(1).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises a passel of claims of ineffective assistance of counsel in the brief filed by his appellate attorney and in his Standard 4 brief. But defendant did not present those claims in a motion for a new trial, a request for an evidentiary hearing in the trial court, or a motion for remand in this Court, so our review is limited to errors that are apparent on the record. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

To succeed on a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome [of the trial] would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To demonstrate deficient performance, "a defendant must overcome the strong presumption" that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613

NW2d 694 (2000). Counsel's failure "to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). With these standards in mind, we shall consider each and every claim of ineffective assistance of counsel advanced by defendant and his appellate attorney.

## 1. FAILURE TO REDACT DEFENDANT'S POLICE INTERVIEW

Defendant gave a comprehensive statement to two detectives on February 12, 2018. Now, defendant contends that his trial counsel acted ineffectively in rejecting the trial court's invitation to redact any prejudicial and irrelevant portions of the interview before it was presented to the jury at trial. During a pretrial hearing on June 3, 2021, the trial court explored with defendant's attorney the option of redacting portions of defendant's interview that contained references to defendant's past membership in a motorcycle club, his criminal history, and his past imprisonment. Counsel explained that he had discussed the matter with defendant, who did not want any of that interview redacted because he wanted his "story told." The record demonstrates that the decision whether to redact potentially prejudicial matters from defendant's interview was a strategic one. The record reflects that defense counsel was aware of the option of redacting portions of defendant's interview and was diligent in discussing that issue with defendant, but defendant was adamant about wanting the entire statement introduced because he wanted to have his "story told." At the pretrial hearing, defendant expressly assented to presenting the unredacted interview at trial, and for sound reasons. The interview revealed that defendant had been forthright about admitting to a difficult and violent past, and he apparently wanted the jury to be aware of that, perhaps believing that it would enhance the credibility of his explanation that his girlfriend's death was an accident. Although that strategy was not successful, that adverse outcome does not render counsel's performance deficient. *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016).

## 2. FAILURE TO REDACT REEVES'S FORMER TESTIMONY

Defendant argues that his trial attorney performed deficiently by not seeking any redaction of Reeves's former testimony, such as her references to defendant's membership in a motorcycle club, his nickname, i.e., Conan the Barbarian, and the fact that she met defendant in a "drug bar." Again, the record establishes that defendant and his trial counsel discussed the option of redacting portions of Reeves's prior testimony, but expressly declined to do so as a matter of trial strategy. Although Reeves's testimony indicated that defendant was a member of a motorcycle club, that he had the nickname Conan the Barbarian, and that he and Reeves met at a bar known as a drug club, the defense declined the option of redacting all that information. Defense counsel, acting upon the wishes of defendant, decided that that information would not harm defendant's case, particularly considering that defendant had already insisted that he did not want similar information redacted from his interview with the police. Defendant confirmed on the record that he had discussed the matter with defense counsel and he agreed with the decision not to redact any portion of Reeves's former testimony.[4] Thus, defendant has failed to overcome the presumption that the decision to

---

[4] That discussion took place on the record at a pretrial conference held on June 3, 2021.

decline redaction of Reeves's former testimony was sound trial strategy. *People v Abcumby-Blair*, 335 Mich App 210, 236-237; 966 NW2d 437 (2020).

### 3.  INTRODUCTION OF PREJUDICIAL INFORMATION

Defendant faults his trial attorney for introducing prejudicial information during jury voir dire, his opening statement, and his cross-examination of Detective Matt Harburn.  But defendant has not demonstrated that counsel's decision to freely discuss defendant's violent past, his criminal history, his past imprisonment, and his drug addiction was objectively unreasonable in light of the defense strategy at trial.  Many of those matters were mentioned in defendant's police interview, and defendant expressly wanted that information presented to the jury because he wanted the jurors to hear his story.  Given that strategy, it was reasonable for counsel to explore those matters during voir dire to ascertain whether the potential jurors would be able to fairly decide defendant's guilt based on the evidence related to the charged offenses, as opposed to defendant's past.  Further, by discussing defendant's prior criminal history and his drug addiction in the opening statement, and thereafter exploring those issues with witnesses, trial counsel furnished context for the history of defendant's relationship with McKelvey, including how it started and how it had unusual aspects from the very beginning, which extended to their unorthodox sex life.  Trial counsel's reference to that information also bolstered the theme that defendant did not have any motive to kill McKelvey because she had been loyal and supportive during defendant's drug rehabilitation even though she knew of his criminal history.  Thus, considering the defense strategy at trial, we are not persuaded that trial counsel's performance fell below an objective standard of reasonableness.

### 4.  TRIAL COUNSEL'S CLOSING ARGUMENT

Defendant criticizes defense counsel's failure to discuss during closing argument Reeves's affidavit and correspondence to defendant in which she recanted portions of her testimony against defendant.  In addition, defendant faults trial counsel for not addressing during closing argument the evidence concerning his prior imprisonment, his parole status, and his drug relapse.  Decisions regarding what evidence to highlight during closing argument are matters of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).  In closing argument, defense counsel elected to focus on the prosecution's burden of proving defendant's guilt and the lack of evidence that defendant had any reason or motive to kill McKelvey.  Defendant has not overcome the strong presumption that trial counsel acted reasonably in focusing on the evidence that directly related to the charged offenses and explaining why that evidence did not prove defendant's guilt. *Abcumby-Blair*, 335 Mich App at 236.

### D.  ISSUES RAISED IN DEFENDANT'S STANDARD 4 BRIEF

Defendant's Standard 4 brief is rich in allegations, but short on persuasive arguments.  The claims advanced by defendant on his own behalf can be divided into three categories: ineffective-assistance-of-counsel claims; concerns about attorney-client privilege and unreasonable searches; and a bindover challenge.  We shall address those three categories of claims *seriatim*.

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's Standard 4 brief offers a wide variety of arguments that his attorney rendered ineffective assistance of counsel. First, defendant claims that his attorney was ineffective because he did not perform an adequate investigation and he did not present essential expert testimony. In particular, defendant faults his trial counsel for not calling as witnesses a gas company technician and a forensic scientist to rebut DNA evidence linking defendant to the gas left on in McKelvey's house. As defendant correctly observes, a defense attorney can be ineffective by failing to conduct a reasonable investigation. Additionally, trial counsel's performance is not insulated from review simply by characterizing it as trial strategy if that trial strategy was not the product of a reasonable investigation. *Trakhtenberg*, 493 Mich at 52-53.

Contrary to defendant's contentions, the record does not support his claim that trial counsel failed to adequately investigate the matter of the gas line at McKelvey's house. The record reflects that trial counsel thoroughly cross-examined firefighter Scott Altheide regarding the gas levels in McKelvey's house both when the firefighters first arrived and when they were called back to the home a second time because of the pervasive smell of gas. Trial counsel also questioned Altheide about the circumstances that caused him to pull the stove further away from the wall to reveal the open gas valve and subsequently close it.

Defendant suggests that his trial attorney should have called a gas company technician to testify as to why gas was still flowing in the home after the main line was turned off at the exterior of the home, but the record reflects that counsel explored that issue with Altheide. Specifically, Altheide opined that the line may not have been capped off and the valve taken off when the stove was converted from gas to electric, and "for some reason that was the only place gas was coming from at that time." Although Altheide ultimately was not able to provide an explanation for why gas was still flowing to the valve behind the stove after the main gas line was turned off, defense counsel may have reasonably determined that that was not particularly relevant or important to the defense, or instead that it was better not to obtain a more definite answer, particularly considering that defendant's DNA was found on the valve behind the stove.

More significantly, defendant has not established that a gas company technician could have offered any evidence favorable to his defense. Defendant has the burden of establishing the factual predicate for his claim of ineffective assistance. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Defendant has not presented an affidavit or an offer of proof to suggest what testimony a gas company technician could have provided. Without any such explanation, defendant has not provided any factual predicate for his claims that defense counsel performed deficiently by failing to call a gas company technician and that defendant was prejudiced by his attorney's failure to call such a witness.

Defendant also insists that his attorney was ineffective because his counsel did not consult or call a forensic expert to rebut the prosecution's evidence from Amber Smith, a forensic analyst, who testified that defendant was a contributor of DNA found on the gas valve. Defendant asserts that his defense attorney was obligated to consult and obtain an expert to rebut Smith's testimony. An attorney's decision whether to call an expert witness ordinarily is regarded as "a matter of trial strategy." *People v Payne*, 285 Mich App 181, 189-190; 774 NW2d 714 (2009).

At trial, defense counsel cross-examined Amber Smith regarding potential contamination issues, the difference between DNA from bodily fluids and DNA from skin cells, and the kind of DNA recovered from the gas valve. Counsel also explored whether Smith had information about the last person to touch the gas valve before it was swabbed. Counsel also asked Smith whether a technician collecting the DNA from a crime scene could tell if the DNA was contaminated or taken from another person before it was placed on the gas valve. Thus, contrary to defendant's cursory assertion in his Standard 4 brief, the record does not reveal that trial counsel performed anything less than a reasonable investigation in undertaking the defense. Moreover, although counsel did not call any expert witness to rebut the testimony of the prosecution's DNA expert, defendant has offered no factual support for his position that another DNA expert could have provided testimony that would have aided the defense. Thus, defendant has not met his burden of demonstrating either that counsel's failure to call an independent DNA expert was objectively unreasonable or that any prejudice resulted from the failure to call such a witness.

Defendant argues that counsel was ineffective for not "properly address[ing] the deliberate loss of exculpatory evidence" by the police and the prosecution. Defendant refers to a history of YouTube videos he and McKelvey allegedly reviewed regarding how to defrost a refrigerator and self-defense techniques. Defendant contends that, during his police interview, he asked Detective Harburn to go to McKelvey's home to look at the television's Internet search history, and Detective Harburn agreed to do so. Defendant suggests that the police and prosecution suppressed or failed to preserve that evidence and his defense counsel was ineffective for failing to raise that issue, but the record reflects that the police never possessed, and never could obtain, the alleged evidence.

As our Supreme Court recognized in *People v Christian*, 510 Mich 52, 55-56; 987 NW2d 29 (2022), "[o]ne of the foundational principles of our criminal legal system is that the state cannot keep evidence from the accused—especially exculpatory evidence." In *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the United States Supreme Court ruled that it is a violation of due process for the prosecution to suppress material evidence that is favorable to a defendant, regardless of the prosecution's good faith. A three-part test governs the analysis of an alleged *Brady* violation: the undisclosed evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued. *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).

Contrary to defendant's argument, the record does not establish that the prosecution or the police suppressed any evidence in their possession. With respect to the alleged search history on McKelvey's television mentioned during defendant's interview on February 12, 2018, Detective Jason Whittey admitted that he did not investigate that information until early 2020. Furthermore, Detective Whittey explained that the television in McKelvey's home would not have maintained a browser history of the YouTube videos that she and defendant allegedly watched together before she died, so an earlier search by Detective Whittey would not have yielded the evidence defendant sought. Accordingly, because neither the police nor the prosecution possessed that information in the first instance and the record reveals that the information could not be recovered, defendant's claim of a *Brady* violation is unavailing. Therefore, trial counsel was not ineffective for failing to assert that claim. See *Ericksen*, 288 Mich App at 201.

-9-

## 2. VIOLATION OF THE ATTORNEY-CLIENT PRIVILEGE

Defendant contends that he is entitled to a new trial because his meetings with his defense counsel while he was detained in jail were recorded in violation of his attorney-client privilege and his right to protection against unreasonable searches. Because defendant never raised that issue in the trial court, his claim is unpreserved, so our review is limited to a search for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant has neither developed nor offered factual support for his claim that his meetings with his defense counsel at the jail were illegally recorded. Defendant has the burden of providing a record "to verify the factual basis of any argument upon which reversal [is] predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Without any evidence showing that adequate safeguards were not employed to protect the confidentiality of defendant's communications with his attorney, defendant cannot satisfy his burden of establishing plain error.

## 3. CHALLENGES TO THE BINDOVER

Reaching all the way back to his preliminary examination, defendant contends that the trial court erred by denying his motion to quash the district court's decision to bind him over for trial. A trial court's decision on a motion to quash is reviewed for an abuse of discretion. *People v Zitka*, 325 Mich App 38, 43; 922 NW2d 696 (2018). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *Id.* at 43-44. But because defendant was convicted by a jury verdict at trial, he cannot contest the bindover on this appeal because "the presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless." *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010); see also *People v Wilson*, 469 Mich 1018 (2004) ("If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover."). Even if we could consider defendant's challenge to the bindover decision, we would reject that challenge.

The purpose of a preliminary examination is to determine whether a felony was committed and there exists "probable cause for charging the defendant with committing" it. See MCL 766.13. In the context of a bindover to circuit court, a finding of probable cause requires evidence sufficient "to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt." *People v Waltonen*, 272 Mich App 678, 684; 728 NW2d 881 (2006). At the preliminary examination, Dr. Brian Hunter testified that the cause of Ranee McKelvey's death was strangulation and the manner of death was homicide. Dr. Hunter explained that the "rule of thumb" is that an individual suffers irreparable brain damage within 30 seconds of being strangled, which is what he concluded happened to her. Detective Harburn testified that defendant recounted to him during a police interview that he had been showing McKelvey how to get out of a chokehold when she stopped breathing. In addition, defendant acknowledged performing CPR on McKelvey for 30 minutes without success and then fleeing to Detroit. Scott Altheide, a firefighter who went to McKelvey's house, testified that when he arrived at the house, he smelled natural gas and saw candles burning in the house. He found that the source of the gas leak was behind an electric stove that had been converted from a gas stove and that "the gas hook-up was left there instead of being capped off and it was on, it was turned on." McKelvey's dog was also found in the home.

The evidence at defendant's preliminary examination supported the district court's finding of probable cause to believe defendant murdered McKelvey and then intentionally opened the gas valve and lit candles intending to burn down the house, see *People v Nowack*, 462 Mich 392, 408-409; 614 NW2d 78 (2000), knowing that McKelvey's dog would be killed in the fire.  See MCL 750.50b(2)(b).  Therefore, the trial court did not abuse its discretion by denying defendant's motion to quash the bindover.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle
/s/ Christopher P. Yates